## JOE WISDOM v. STATE.

No. A-3520—Opinion Filed Dec. 18, 1920.

(193 Pac. 1003.)

(Syllabus.)

**APPEAL AND ERROR—Reversal—Improper Cross-Examination.**
Where the evidence is in irreconcilable conflict, and the case is
a very close one on the facts, the record will be closely scrutiniz-
ed. In such case improper cross-examination of the defendant,
properly objected and excepted to, is held sufficient ground for
reversal of conviction.

*Appeal from District Court, Jefferson County;
Cham Jones, Judge.*

Joe Wisdom was convicted of the crime of grand lar-
ceny, and he appeals. Reversed and remanded.

*Champion & George,* for plaintiff in error.

*S. P. Freeling,* Atty Gen., and *W. C. Hall,* Asst. Atty.
Gen., for the State.

MATSON, J. Joe Wisdom was convicted in the dis-
trict court of Jefferson county of the crime of grand lar-
ceny, and sentenced to serve a term of two years' im-
prisonment in the state reformatory at Granite. Several
alleged grounds of error are assigned for reversal of the
judgment. In view of the disposition made of this appeal,
it will not be necessary to consider all of the assignments
of error.

The evidence on the part of the state showed that one
J. B. Biggerstaff, who resided near the town of Hastings,

Jefferson county, Okla., had a 1916 model Ford automobile stolen from his barn on the night of August 13, 1917, and that the same was found by him about two weeks later in a yard back of the Tulsa Rooms, in the town of Healdton, Okla. The proof is conclusive that Bigggerstaff had his automobile stolen, and there is no controversy but that the same was found in the possession of Mr. L. Tucker and Mrs. A. E. Bailey, who were the proprietors of the Tulsa Rooms, about two weeks after the theft.

Tucker and Mrs. Bailey both testified that defendant appeared at their rooming house about noon, to the best of their recollection, on the 14th day of August, 1917, and asked permission to leave his car in their back yard, which permission was granted defendant; whereupon defendant drove the car into the back yard and left it. A witness by the name of Overstreet also corroborates the other two witnesses for the state.

It appears from the evidence that defendant never returned to claim the car he had left at the Tulsa Rooms, nor did he send anybody for the car. However, during the two weeks that the car remained at the Tulsa Rooms the top was removed from the same, two casings were also removed and others put in their place, and the numbers on the engine of the car were removed and different numbers stamped thereon. There is no evidence in the record to the effect that defendant either took the top off the car, removed the casings, or changed the numbers. The state witnesses only testified to the fact that defendant brought the car to that place and left it.

Defendant took the witness stand in his own behalf, and testified that he took a five-passenger 1916 model Ford automobile to the Tulsa Rooms about the time testified

to; that he was in possession of the car only for about 15 minutes, and drove the car to that place at the request of one Fred Brown, whom he knew, and who was working in the oil fields at Healdton at that time, and who, defendant testified, he believed roomed at the Tulsa Rooms; that he told Tucker he was leaving the car there for Brown. Defendant said Brown drove up to him on the streets of Healdton, and asked him to take the car to the Tulsa Rooms and leave it for him, that he (Brown) was in a hurry, and wanted to take a service car which was then leaving for the city of Ardmore, and defendant said that this was the only connection that he ever had with the automobile.

Defendant is corroborated by two other witnesses, who testified that they saw a man drive up to defendant in a Ford automobile on that occasion, talk to defendant, and saw defendant drive off in the direction of the Tulsa Rooms, and that defendant returned to where they were within 10 or 15 minutes after he drove off in the car.

The wife of defendant testified in his behalf that on the night of the 13th of August, 1917, defendant stayed at his home in Pooleville, Okla., and had not been away from home at night for several nights prior thereto. Defendant also produced a witness who testified that on August 14, 1917, he and defendant left defendant's home in Pooleville early in the morning and drove in defendant's car to Healdton, where defendant had some business. Defendant also produced a witness who testified that he met defendant in Healdton on August 14th, about 11 o'clock, that defendant came to see him to collect some money that he owed defendant for a wagon which defendant had

sold him, and that on that occasion he paid defendant $15 that he owed for the wagon.

The only evidence on the part of the state which tends to incriminate defendant is that he was shown in possession of the car alleged to have been stolen on the next day after the theft for a period of about 15 minutes, and it is undisputed that defendant did nothing but drive the car to the back yard of the Tulsa Rooms in the town of Healdton, and there left it. While the story told by defendant as to how he obtained possession of the car is almost incredible, yet it is hardly consistent with guilt that defendant would go a distance of over 100 miles from his home, steal an automobile, drive it back towards home over two-thirds of the distance, and there abandon it without selling it; this, too, in the face of the undisputed evidence that the town of Healdton is in a thickly settled oil community where defendant was well known, and only 20 miles from where defendant lived in thinly settled community at a place where it would be much easier for him to conceal the stolen automobile were he in fact the thief.

However, the weight of this evidence and the inferences properly to be drawn therefrom, together with the credibility of the witnesses, were all matters within the exclusive province of the jury, and attention is called to the evidence solely for the purpose of showing that the conviction is based upon evidence which is in irreconcilable conflict, and that the case is an extremely close one upon the facts.

During the progress of the trial, in connection with the cross-examination of defendant, the county attorney asked defendant if during the year 1916 he was not en-

gaged in the liquor hauling business, to which defendant answered, "No, sir." Thereupon, the county attorney asked defendant the following question:

"During the month of July, 1916, did you in company with Barney Alderson make a trip for Mike Miller from the town of Wirt to Walter Johnson's wholesale house in Jefferson county, and haul back two loads of whiskey?"

To which question counsel for defendant objected for the reason that the same was incompetent, irrelevant, and immaterial, and on the further ground that the answer might tend to incriminate the witness of a separate offense for which he could not be required to answer, which objection was by the court overruled, to which defendant excepted, and to which question the defendant answered, "Yes, sir."

It is here contended that the court's ruling was prejudicially erroneous to defendant in this case. The Attorney General contends in his brief that this evidence was competent, because it tended to show the previous occupation, companions, and association of defendant. With this contention the court cannot agree. We do not understand that the previous occupation, companions, and associates of a witness are to be shown or proved by one particular act of misconduct. Such matters should be shown by a general line of conduct or association. The effect of the introduction of this evidence, of compelling defendant to answer the question, was to prove defendant's guilt of a distinct offense, in no way connected with the offense for which he was upon trial, and in no way tending to prove defendant's guilt of the offense charged.

It is well established that—

"A witness cannot be impeached by evidence of particular wrongful acts, nor is it proper to question the witness with reference to such matters." *Litchfield v. State,* 8 Okla. Cr. 164, 126 Pac. 707, 45 L. R. A. (N. S.) 153; *Welch v. State,* 16 Okla. Cr. 513, 185 Pac. 119.

Also it has been held:

"For the purpose of affecting the credibility of a defendant as a witness, it is prejudicial error for the court to require the defendant to answer on cross-examination as to his having been charged with other offenses." *Byars v. State,* 15 Okla. Cr. 308, 176 Pac. 253.

Also it has been held:

"It is permissible on cross-examination to inquire into the antecedents of a witness by showing his occupation, vocation, or manner of living as a general rule. This character of examination, however, is permissible only when the facts sought to be elicited are pertinent to the issue, or have some material relation thereto."

No rule of criminal law is better settled than that you cannot convict a defendant of one crime by proving him guilty of another and independent offense. *Smith v. State,* 5 Okla. Cr. 67, 113 Pac. 204; *Snow v. State,* 3 Okla. Cr. 294, 105 Pac. 576; *Rea v. State,* 3 Okla. Cr. 270, 105 Pac. 381.

The evidence elicited and required from defendant in his cross-examination did not tend to show his general occupation or that he was in the habit of associating with criminals, but its only effect was to compel defendant to testify to his guilt of an independent crime (that of transporting intoxicating liquor) in no way shedding any light upon the question of his guilt or innocence of the offense charged.

The ruling of the trial court in overruling the objection of counsel for defendant to this line of cross-examination was erroneous, and it was prejudicial to the substantial rights of defendant in view of the marked conflicting evidence to permit such a line of cross-examination, and for this reason the judgment of conviction must be reversed and the cause remanded for a new trial.

Attention is also called to the charging part of the information in this case, which reads as follows:

"That the said Joe Wisdom, then and there being, did then and there willfully and unlawfully and feloniously take, steal, and carry away by stealth and fraud one 1916 model Ford automobile, of the value of $200, without the consent of the owner thereof, with the unlawful and felonious intent of him, the said Joe Wisdom, then and there to convert the same to his own use and benefit and to deprive the owner thereof, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state."

It is to be noted that the information contains no allegation of ownership of the automobile in question to have been in another person than defendant. Such an allegation would be essential to the validity of the information were the same attacked by demurrer in the lower court, and if this cause is retried, the information should be amended to allege the ownership of the automobile to be in J. B. Biggerstaff.

Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.

DOYLE, P. J., and ARMSTRONG, J., concur.