## BEN BARNETT v. STATE.

No. A-5337.   Opinion Filed April 6, 1926.
(244 Pac. 830.)

Anglin & Stevenson and Pryor, Stokes & Carver, for plaintiff in error.

The Attorney General and Smith C. Matson, Asst. Atty. Gen., for the State.

BESSEY, P. J.   The plaintiff in error, here designated the defendant, was a negro 32 years old, the owner of considerable property, who lived with his family in the country near Holdenville.   On the day of the homicide he came to Holdenville with his wife, who was leaving to visit a sick relative.   Later in the evening, after she had left, he visited various public places in Holdenville, and at about 8.30 o'clock went to a house where there was a dance, to see a tenant who was occupying one of defendant's houses in Holdenville, about some repairs.   There he saw the deceased, Ethel Thomas, who had followed him to this house, and a quarrel ensued, culminating in her death from a shot fired from an automotic pistol in the hands of the defendant.

There was evidence showing, or tending to show that the defendant and this Ethel Thomas had been much in one another's company, and that she was his mistress; that when she was intoxicated she was a quarrelsome, turbulent, and dangerous damsel, who frequently went armed with a knife or razor; that on this particular night she was intoxicated and had a knife. Portions of the record would seem to indicate that she was endeavoring to compromise the defendant for the purpose of blackmailing him, and that the defendant knew of such purpose.

When the deceased heard that the defendant was

in the rear room of the house where this negro dance was in progress, she sent word to him that she wanted to see him. He gave no heed to this message, but later when he went out to his car to leave the place she was there waiting for him, and demanded of him that he take her home. He refused, and she seized hold of him and cursed him, calling him vile and insulting names. Presently they became disengaged and walked off together down the street, where the quarrel was renewed. The defendant says that in the course of the second affray, when the deceased was threatening to and was in the attitude of striking him with an open pocket knife, he struck at her hand and arm with his automatic pistol, for the purpose of knocking the knife from her hand, and that the pistol was accidentally discharged. Immediately after the shooting, an open pocket knife was found near the dead woman's body.

The defendant, in excitement, fled to his home in the country; when he later heard that he had killed the woman, he came in and voluntarily surrendered to the sheriff.

Excepting for the evidence concerning the manner of the firing of the fatal shot, the defendant's evidence in its most material parts is well corroborated by the witnesses for the state. As to the firing of the shot, there were two eyewitnesses who testified for the state, whose testimony indicates that the fatal shot was fired deliberately, not accidentally, nor in self-defense. Two or three eyewitnesses for the defendant gave testimony indicating that the firing of the pistol may have been accidental or in self-defense.

The court permitted the county attorney, over the objections of the defendant, to interrogate the defendant's witnesses concerning specific offenses, or instances of misconduct, imputed to the defendant's witnesses, on cross-examination, with an apparent intent of discrediting these

witnesses concerning matters not at issue. From the record we quote an example, similar to others not quoted:

Ida Wells had testified that she saw and talked with Ethel Thomas, the deceased, that night, and that she was drunk, and that her reputation for being quarrelsome and dangerous was bad. Then followed this testimony:

"By the County Attorney: You say that Ethel's reputation was bad? A. Yes, sir.

"Q. You are a judge of that? A. I have seen her drunk.

"Q. You have paid a few city fines, haven't you? A. No, sir.

"Q. Didn't you pay a city fine in the city court for laying up down here with the defendant in this case? A. I never have.

"Q. Wasn't you and Ben Barnett convicted down here? A. No, sir.

"By Mr. Stevenson: We object, as incompetent, irrelevant, and immaterial, and we object to the conduct of the counsel, asking a question of that kind without laying the proper predicate, and asked for the purpose of prejudicing the jury.

"By the Court: That question may be asked to show the interest. I want to get all the facts in the case, if I can, on both sides. I want to hear it all. I want to see what kind of witnesses they are, and who they are. Anything further with this witness? Anything further?

"By the County Attorney: Haven't you been convicted in the city court for selling choc? A. No, sir; I have not.

"By Mr. Pryor: We object to that as incompetent, irrelevant, and immaterial, and ask the court at this time to instruct the county attorney not to pursue such questions further, for the reason that the Criminal Court of Appeals has ruled you can only ask a witness whether or not they have been convicted of a crime that involves moral turpitude."

No evidence was offered supporting these imputations, and this method of cross-examination had the effect of impeaching the character of this witness without competent proof on that point. The court also permitted the state to show that this witness was charged with the violation of a city ordinance for a specific act of lewdness with another man.

Ordinarily, a witness cannot be impeached by evidence of particular wrongful acts, nor is it proper to question a witness with reference to such matters. If the rule were otherwise, the best of us could not safely go upon the witness stand. To affect his credibility, a witness may be asked if he has been convicted of crime, but not as to whether he has been arrested or charged with crime. Litchfield v. State, 8 Okla. Cr. 164, 126 P. 707; Porter v. State, 8 Okla. Cr. 64, 126 P. 699; Welch v. State, 16 Okla. Cr. 513, 185 P. 119; Wisdom v. State, 18 Okla. Cr. 118, 193 P. 1003.

Now, with this and other witnesses so improperly impeached or discredited, the jury may have believed that Ethel Thomas was practically without fault. If, on the other hand, the testimony of the defendant's witnesses was worthy of credence, the jury might have found that the defendant was perhaps justified in repelling an assault by this drunken woman, or that there were mitigating circumstances which would have caused them to assess a lighter penalty.

There were some minor errors in the exclusion of testimony which cannot be profitably treated here in detail.

The instructions of the court to the jury fairly covered the law of the case.

The cause is reversed and remanded.

DOYLE and EDWARDS, JJ., concur.