Hon. JNO. H. BURFORD, Chief Justice.
Hon. JNO. L M'ATEE,
Hon. BAYARD T. HAINER,
Hon. BENJ. F. BURWELL,
Hon. CLINTON F. IRWIN,

} Associate Justices.

---

### JOHN WALBURN v. THE TERRITORY OF OKLAHOMA.

(Filed Aug. 25, 1899.)

1. CRIMINAL LAW—*Carrying Weapons*— *Valid Statute.* The provisions of art. 45, ch. 25, Statutes 1893, in reference to carrying weapons, are not in conflict with any constitutional provision or Organic Law, and are, therefore, valid and may be enforced against all persons violating their inhibitions.

2. TRIAL—*Evidence—Material Error.* It is material error to admit evidence of other misconduct of the defendant over his objection, which is not pertinent to any issue, and which is calculated to inflame the minds of the jury against the defendant.

3. SAME—*Immaterial Evidence—Prejudice—Error.* Over the defendant's objections the Territory was permitted to prove that the prosecuting witness was a tenant on the defendant's farm and resid-

ing in defendant's house; that on the day of the alleged offense the defendant procured several men and went with them to th's house and over the objection of the witness, and while his family were in the house, tore it down, and hauled it away without hav ng ever brought any suit for possession; thus leaving witness and his family without any shelter. *Held*, Error, as the facts mentioned were not material to any issue in the case, and were calculated to prejudice the minds of the jury against the defendant.

(Syllabus by the Court.)

*Error from the District Court of Garfield County; before John L. McAtee, District Judge.*

*Lee M. Gray, J. H. Antrobus,* and *W. C. Stevens,* for plaintiff in error.

*O. D. Hubble, County Attorney,* and *Harper S. Cunningham, Attorney General,* for defendant in error.

Opinion of the court by

BURFORD, C. J.: The plaintiff in error, John Walburn, was prosecuted by information for carrying a revolver on his person. Trial was had to a jury, and a verdict of guilty returned, and defendant adjudged to pay a fine of $25. From this judgment he appeals.

The first contention is that the law under which he was convicted is in conflict with the constitution of the United States. No authorities are cited in support of this position, nor is the proposition very earnestly urged. As at present advised, we are of the opinion that the statute violates none of the inhibitions of the constitution of the United States, and that its provisions are within the police power of the Territory.

The next contention is that the court erred in admitting, over the objection of the defendant, irrelevant and

immaterial evidence, which prejudiced the jury in the case. It appears from the evidence that one Ellington was residing on a farm belonging to the defendant. That on the day of the alleged offense, the defendant went with one Lee M. Gray, in a buggy from Hennessey, in Kingfisher county, to his farm in Garfield county, and, after procuring some other persons to assist him, began tearing down and removing a house situated on the farm. The team and buggy were left some distance from this house, but within view of those at the house. Mrs. Ellington, the wife of the prosecuting witness, testified that she knew the defendant; that after he had been at this house a short time, he and Gray went out to the buggy, and that Gray took an overcoat out of the buggy and got a revolver out of it, and placed it in the inside pocket of defendant's coat, on the left side; that it had a bright barrel, and black handle; that she was about eighty yards from them at the time she saw them with the revolver; that defendant and Gray then came back to the house, and after a portion of the house had been taken down, and a portion was still standing, she saw the defendant take the revolver from his left hand inside coat pocket, and place it in his right hand front pants pocket.

Ray Ellington, a boy nine years old, and a son of the former witness, testified substantially to the same facts that his mother testified to, except that he testified that Gray put the revolver in the right pocket of the defendant, instead of the left.

David B. Ellington, the father of Ray and husband of Mrs. Ellington, the first witness, testified that he saw

the form or shape of a revolver through the pants of defendant, but did not see any part of the revolver.

J. H. Wood testified, on behalf of the Territory, to the effect that he was at the Walburn place on the day of the alleged offense, and saw the defendant and other persons there; was only there a short time, and saw parties tearing down a house.

L. J. Ellington, a brother of the prosecuting witness, testified that he was at the Walburn farm where the house was being torn down, and saw Walburn at that time; that he saw a small portion, probably a half-inch of the butt of a revolver sticking out of defendant's pocket.

The defendant testified that there was a revolver in a scabbard out at the fence in his buggy, but that he did not have it out of the buggy or in his pocket at any time; that he and Gray went from the house to the buggy, and Gray got a plug of tobacco from his over-coat pocket, and they then walked back to the house.

Mr. Gray testified that he saw a long black revolver lying in the bottom of the buggy, in a leather scabbard, but that he never had it in his pocket, nor put it into defendant's pocket, nor handled it in any manner, and stated positively that the revolver was not taken out of the buggy, and that he never saw any other revolver that day.

Mr. Shelby and Mr. Foust, both of whom were work-ing with the defendant at the time, testified that he could not have carried a revolver in his pocket without them seeing it, and that they saw no revolver or the ap-

pearance of any, on the defendant, or any other person that day.

The testimony of the defendant and his witnesses squarely contradicted the testimony for the Territory, and the jury were required to determine the weight of the evidence and credibility of the witnesses in coming to a verdict.

From the testimony as it appears upon paper, it hardly seems possible that the jury could find, beyond a reasonable doubt, that the defendant was guilty of the offense charged. Yet such was their verdict, and they had opportunities of determining the weight of the testimony and credibility of the witnesses, which this court does not possess.

But in view of the contradictory character of the evidence upon which the defendant was convicted, it becomes the duty of this court to scrutinize the more carefully any evidence which went before the jury which was improper for it to consider, and which might have tended to prejudice them against the defendant. The particular matters complained of are as follows: In the examination of David B. Ellington, after he had testified that he was residing upon the defendant's farm, he was permitted, over the objection of defendant, to testify as follows:

"Mr. Walburn came out and said he came to tear the house down, and I forbid him tearing it down, and I told him he would have to show me what authority he had; he says, 'I have got it,' and he says, 'I am worth it.' He says, 'You go ahead and sue me for damages,' and so on, and 'make it out of me,' and I went down to call in some of my neighbors then; first went to my

brother's to get a horse, and when I came back they had torn it down."

In the examination of the witness Wood, after he had testified to seeing Gray and the defendant at Ellington's house, he was asked this question: "At that time what was going on," which was objected to, and the objection overruled. The witness answered: "They were busy, or their hands were, tearing the house down, and laid it on the wagon."

These questions were objected to on the ground that they were not proper cross-examination, and called for irrelevant, incompetent and immaterial testimony. The objections were overruled, and proper exceptions saved.

The result of these answers, together with other evidence in the case, was to develop the fact that Ellington and his family were residing in a house on Walburn's farm; that Walburn went on the place at the time of the alleged offense with a number of employees, and forcibly tore down the house in which they were living, and hauled the wreck away, leaving them without shelter. The evident effect would naturally be to prejudice the jury, and we think it could have no other effect. There was nothing in the allegations of the information, or in the examination of the witnesses which rendered this testimony competent.

However reprehensible the conduct of the defendant may have been in this matter, he was not charged with these acts, nor were they necessary to a proper development or determination of the matters he was charged with. It appears from the record that the trial court

stated in admitting this class of evidence, that it might be considered in mitigation or aggravation, if the jury should find the defendant guilty, and that he would cover the matter by proper instructions. If the court had this question in view at the time the evidence was admitted, it was overlooked at the time the jury was instructed. An examination of the instructions given shows that the court failed to instruct the jury as to the effect of this class of testimony. It is possible that if the court had advised the jury to disregard all this evidence, that it would not have been error. Yet, it is always dangerous to permit evidence to go to the jury which is for the consideration of the court only. Where the jury assesses the punishment on verdict of guilty, it is proper to admit evidence which goes only in mitigation or aggravation, but in this Territory, the court assesses the punishment, and our statute, section 5286, provides:

"After a plea or verdict of guilty in a case where a discretion is conferred upon the court as to the extent of the punishment, the court, upon the suggestion of either party that there are circumstances which may be properly taken into view, either in aggravation or mitigation of the punishment, may, in its discretion, hear the same summarily at a specified time, and upon such notice to the adverse party as it may direct."

This statute excludes the idea that such evidence may be permitted to go to the jury, and the admission of evidence which would tend to aggravate the offense, would tend to prejudice the jury, and should be excluded.

The sole question for inquiry in this case was whether at the time and place charged, the defendant had con-

cealed on his person a revolver. The evidence should have been confined to this inquiry,—collateral facts which did not tend to establish or disprove this material fact were not properly admissible.

In the case of *Valdez v. State*, 18 S. W., 414, the defendant was prosecuted for carrying concealed weapons. On the trial the court permitted a witness to testify, over the objections of the defendant, that the defendant had come into the saloon and got a drink, and when he asked the defendant for the pay, that he drew a knife on the witness, and witness then hit defendant over the head with a gun and, bent the barrel. That when defendant came into the saloon he had a gun, but it was taken away from him, and that he had heard that defendant had threatened to kill him. The court of appeals of Texas reversed the case and said:

"It was material error for the court to permit this testimony to be introduced over defendant's objection. It was not pertinent to any issue; was prejudicial to the defendant's rights and interests, and calculated to inflame the minds of the jury against him."

In the case of *Baker v. State*, 11 S. W., 676, the Texas court of appeals said:

"Over defendant's objections, the state was allowed to prove a number of incidents occurring before defendant. was seen with the pistol, among which were a quarrel and separation between the brother and his wife, and the fact that the brother, over his wife's remonstrances, carried away their child, and also took certain property belonging either to the wife or her mother, in which defendant and his brother seemed to be acting in concert, *Held*, error, as the facts mentioned had no

connection with the crime charged, and were calculated to prejudice jury against defendant."

The supreme court of Alabama, in the case of *Dodd v. State*, 9 So. 467, held that it was reversible error to admit testimony over the objection of the defendant, to other improper acts of defendant at the time of the alleged carrying a concealed weapon.

The foregoing authorities properly state the law. The one controlling question in the case at bar was whether the defendant had a revolver concealed on his person. Testimony tending to prove this fact, by those who saw the weapon, or who saw him place it in his pocket, or saw the indications from which it might be reasonably inferred that he had a revolver upon his person, was competent and relevant. His acts and conducts in relation to other matters at the time, were irrelevant, and it was error to permit them to be shown.

For the error of the court in permitting irrelevant testimony, which, in our judgment, was calculated to and did prejudice the jury against the defendant, the cause must be reversed.

The judgment of the district court of Garfield county is reversed, and case remanded, with directions to grant a new trial in said cause.

McAtee, J., having presided in the court below, not sitting; all of the other Justices concurring.