## WILLIAM MAGGARD v. STATE.

No. A-1310.   Opinion Filed April 26, 1913.

(131 Pac. 549.)

1. **APPEAL AND ERROR—Verdict—Evidence.** It is the duty of the jury to settle all conflicts in the testimony, and this court will not disturb a verdict where it is sustained by any testimony which reasonably tends to establish the guilt of the defendant, unless it appears from the record that the jury were influenced by improper motives in accepting the testimony of the state and rejecting the testimony of the defendant.

2. **EVIDENCE—Accomplice—Instruction.** It is not error for the trial court to refuse to give an instruction as to the law applicable to the testimony of an accomplice, where the defendant has been convicted of manslaughter in the second degree for having negligently discharged a pistol in the dark, which resulted in the death of the deceased, and where the evidence fails to show that the alleged accomplice aided, abetted, or encouraged the defendant to fire said shot.

(Syllabus by the Court.)

*Appeal from District Court, Caddo County;*
*Frank M. Bailey, Judge.*

William Maggard· was convicted of manslaughter in the second degree, and he appeals. Affirmed.

The evidence, as far as it is material, may be stated in narrative form as follows:

The record discloses that on the Sunday afternoon of December 4, 1910, appellant armed himself with his "Forty-four" and a supply of cartridges, and went to a neighbor's for dinner, and early in the afternoon went to the home of Ira B. Cooper, and spent the afternoon entertaining and being entertained by Cooper's daughter Bertha. Late in the afternoon, he left Cooper's place and went to one Antone Gesseck's place (which the evidence discloses was a gambling and drinking place); he there found Bertha's father entertaining Antone and the other guests, and being entertained by Antone's wares. Appellant joined Cooper at Gesseck's and they had several drinks with him, and during the two or three hours that they were at his place did several pistol stunts by twirling the pistols around their fingers. Some time between 8 and 9 o'clock Cooper suggested that he had to go home and he and appellant went out of the Gesseck house together. Marion Miller,· an old man 65 years old, a few minutes after Cooper and appellant left, suggested· that he had to go home (he living only a few yards from the Gesseck house). Shortly after this Gesseck and Jacobs heard the shots fired, one of which was evidently the one that killed Miller.

From the time appellant and Cooper left Gesseck's there is a material conflict in their testimony. Appellant "stumbled and run five or six steps south of the house and then fell down, and I went and helped him up, and Mr. Miller came out of the door, and he asked him to help him up, and I said, 'Let's go home,' and he said, 'No, let the old man come on, and we will scare him,' and I did not agree to it." It is agreed that appellant and Miller got one on each side of Cooper and went

on towards home with him, and that, after going something like a 100 yards, Miller decided they could go on home without him. The evidence conflicts here again. Appellant claims that when Miller decided to turn back, and turned Cooper loose, Cooper pulled his gun and began shooting, and appellant lay down, that Cooper shot three times, and the second shot Miller fell. His evidence further shows that Cooper's pistol only held six shells, four of which were shot before leaving Gesseck's house, during which time appellant gave him one shell; three shots being fired at the time Miller was killed and one up near the house after that, making according to his testimony eight shots fired by Cooper, with only seven shells, as appellant denied firing any shot.

Cooper's testimony in substance is that, when he started away from Gesseck's he stumbled a few steps and fell down, when Miller suggested he would help him home, at which time appellant stated to Cooper, "We will scare hell out of him." After going down the road about 100 yards, Miller decided to turn back; Maggard "then produced his gun, showed me his gun like this, and Miller stopped and stepped behind me like this, and Maggard stopped and jumped behind me like this, and some one shot behind me."

Cooper's evidence is also, in substance, that after the one shot there were two other shots fired behind him; he was facing south; that both appellant and Miller were behind him, north of him.

The evidence of both Cooper and daughter is that when they got to the house Maggard remarked they had been having some fun; when Maggard returned and stated that the old man (Miller) was still lying down in the road, Cooper said, "You didn't hit him, did you Bill, when you were shooting?" to which appellant answered "No," and he asked Cooper what he must do about it.

The record discloses that appellant was, on the night of the homicide, very much worried about something after this

shooting. The record may not disclose all that took place between these parties during the time after they left the Gesseck place and the time of the homicide, but this much is clear: That the deceased, an old man 65 years old, in trying to assist one drunk man and one drinking man home, was shot and killed by the negligent act of one of the parties. The only persons there except the deceased were appellant and Cooper. Appellant says Cooper fired the shot that killed Miller; Cooper's evidence discloses that it was Maggard who fired the fatal shot. He is corroborated by Bertha and Rhoda Cooper, who testify relative to the conversation between these two men when Maggard returned to the house after having found Miller's body still in the road. That his story is true is strengthened by the actions of this appellant after the shooting.

George T. Webster, for appellant.
Smith C. Matson, Asst. Atty. Gen., for the State.

FURMAN, J. (after stating the facts as above). First. It is contended by counsel for appellant that the verdict is not supported by the testimony. The record discloses the fact that the deceased, an old man 65 years of age, was attempting to assist one drunk man and one drinking man home, and that he was shot and killed by the negligent act of one of these parties. Appellant testified that the shot which killed Miller was fired by the state's witness Cooper. Cooper's testimony is to the effect that the fatal shot was fired by appellant. He is corroborated by the evidence of Bertha and Rhoda Cooper, who testify to conversations between Cooper and appellant after the shooting was over, and his statement was further strengthened by the actions of appellant after the shooting. The credibility of the witnesses was a question for the jury, and there is nothing in the record to warrant us in holding that the jury were influenced by improper motives in accepting as true the testimony of the state's witness Cooper, and rejecting the testimony of appellant. We therefore cannot sustain the contention that the verdict is contrary to the testimony.

Second. It is contended that the court erred in failing and refusing to instruct the jury on the law applicable to the testimony of an accomplice; it being contended that Cooper was the accomplice of appellant. The act of appellant which the jury found resulted in the death of the deceased was negligently discharging a pistol in the dark. There was no proof of concerted action between appellant and Cooper in this matter. According to appellant's testimony Cooper killed Miller, and he, appellant, had nothing to do with it. According to Cooper's testimony, appellant killed Miller, and Cooper took no part in it. This court should certainly not take a more favorable view of the evidence in behalf of appellant than is disclosed by his own testimony. The mere fact that Cooper was present when the shot was fired would not make him the accomplice of appellant, unless he did some act encouraging, aiding, or abetting the appellant in doing the act which resulted in the death of the deceased.

We therefore hold that the court did not err in failing to give the instruction requested.

No other questions are presented to the court by the petition in error or were discussed in the brief of counsel for appellant. Therefore none other will be considered.

The judgment of the lower court is in all things affirmed.

ARMSTRONG, P. J., and DOYLE, J., concur.