# GEORGE CALL v. STATE.

No. A·6475.  Opinion Filed Feb. 25, 1928.
(264 Pac. 643.)

Morris & Tant, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Wm. L. Murphy, Asst. Atty. Gen., for the State.

DOYLE, P. J.  Appellant, George Call, was charged by information with the crime of murder, alleged to have been committed on or about the 18th of January, 1926, by beating and striking one W. R. Mayfield on and about the head and neck. The jury found him guilty as charged, and fixed his punishment at death.  Motion for new trial was duly filed and overruled.  To reverse the judgment rendered in pursuance of the verdict he appeals.

The undisputed facts are that appellant, George Call, is a convict, and the deceased, W. R. Mayfield, was a guard at the state penitentiary.  Appellant, age about 22 years, had been assigned to work in the penitentiary brickyard.  It was the custom for all prisoners working in the brickyard to eat their noonday meal in an open shed in the brickyard.  On the day alleged in the information appellant, together with several other prisoners, remained in the dining shed for a few minutes after the other prisoners had left.  The deceased, W. R. Mayfield, one of the guards at the brickyard, came into the dining shed, and, after ordering the prisoners to get out, he struck appellant with his fist.  Appellant went out on the

brickyard and stood watching some prisoners playing cards. While standing there, the deceased came up with a cane in his hand, and began to strike and beat appellant with the cane. Appellant picked up a brick and threw it at the deceased, striking him on the head. Ed Cornell, another guard, stepped up and shot appellant twice, one bullet passing through his body. Two days later Mr. Mayfield died.

We have carefully examined the record, and in the consideration of this case we have tried to exercise that degree of caution and care that a proper administration of the criminal laws demands of all courts in cases of life and death. Our examination leads to the conclusion that it will be necessary to reverse the judgment and grant the defendant a new trial. and for this reason we will note the assignments of error only which in the new trial granted will be liable to again arise.

The record shows that the Assistant Attorney General who prosecuted this case, in making the opening statement to the jury, among other things, said:

"George Call, the accused in this case, was delivered to the penitentiary some time in the year 1924, after having been convicted of forgery, I believe, in the second degree, in Jefferson county. I believe for that offense he was given a seven-year term. That while in the penitentiary serving this term, and some time about a year ago—

"By Mr. Morris: Now, if the court please, we object to any statement concerning the conduct of this defendant in the penitentiary about a year ago as being very prejudicial.

"By Mr. Murphy: If the court please, my statement goes to the status of the accused in the case, and we are relying upon the case of Prather v. State, reported in 14 Okla. Cr. 327, 170 P. 1176, which we can prove in our main case.

"By the Court: In this state, the statute prescribes the penalty for the various crimes, and in most cases fixes the penalty, and, in the case where the defendant is found guilty of murder, the jury is bound to assess the punishment, and the status of the defendant may be proven in relation to other offenses of the same generic class, to be considered by the jury as to the status of the defendant in order to fix his punishment either in mitigation or aggravation. Objection overruled.

"By Mr. Murphy: I got to where I left off, while the defendant was in the penitentiary he killed a fellow convict, was tried in this court, and given 27 years. That is his status at the present time. While a state convict in the penitentiary, as I heretofore stated, on the 18th of January he hit W. R. Mayfield with a brick, which caused W. R. Mayfield to later die. The evidence will also show, gentlemen, that the prisoners at the penitentiary are classified into first, second, and third class prisoners. The first classification is where one behaves himself and obeys the rules of the penitentiary, and, on account of his good conduct, he is given the privileges in and around the penitentiary. In other words, a first-class prisoner. A convict classified in the second class is where a convict violates the rules, and is not given all the privileges; and the third class is one where one disobeys the rules of the state penitentiary absolutely, and he is classified as a third-class convict, and has no privileges. The evidence in this case will show that George Call, the accused, is a third-class convict at the penitentiary, and is employed in the brickyard, at hard labor."

The record shows that the court sustained the defendant's objection to this reference to the rules of the penitentiary, and excluded the same.

C. C. West, record clerk at the penitentiary, produced two commitments, and, over the defendant's objections, was permitted to testify that each was a commitment for George Call, the defendant on trial at this time. The commitments were admitted and read to the jury.

The commitment from the district court of Jefferson county is in the usual form, and recites:

"That on the 19th of April, 1924, George Call, defendant, having entered his plea of guilty to the crime of burglary in the second degree, is sentenced to be confined in the state penitentiary for a term of 5 years for said crime by him committed."

The commitment from the district court of Pittsburg county, rendered October 26, 1925, is in the usual form, and recites that the defendant, George Call, was convicted of the crime of manslaughter in the first degree, and sentenced to imprisonment in the penitentiary for a term of 27 years.

The defendant moved to exclude from the consideration of the jury all of the evidence of the witness C. C. West, including the two judgments of conviction and commitments issued thereon, which motion was overruled.

It is contended that the court erred in overruling the defendant's objections to the remarks of counsel for the state in his opening statement to the jury, and in admitting in evidence the commitments showing that the defendant had previously been convicted of forgery and, while serving the sentence, had killed a fellow convict, and for which he had been convicted of manslaughter in the first degree.

It would seem that counsel for the state started out on the trial of this case on the theory that the defendant should be convicted of the crime charged because he had been convicted of other crimes. This was emphasized in the opening statement, and followed up by offering in evidence the commitments objected to. Where the defendant's status as a prisoner becomes relevant, it is a matter which should be shown in a proper and legal way.

An opening statement is to advise the jury concerning

the questions of fact involved, so as to prepare their minds for the evidence to be heard. The scope of the opening statement should be limited to getting before the jury a detail of the testimony expected to be offered, and counsel has no right to state to the jury facts which he may not prove.

In the case of Manuel v. United States (C. C. A.) 254 F. 272, on writ of error from a conviction with sentence of death, Judge Stone, delivering the opinion, concludes as follows:

"Defendant was indicted while a convict at the Leavenworth Penitentiary for killing E. A. Barr, a prison guard. In his statement the district attorney said:

" 'Mr. Barr came in contact from time to time with this defendant who was a convict there, and I may say that this defendant was a convict there pursuant to a conviction had in the district of Alaska in 1910, at which time and in which district he was there convicted of the crime of murder, this very man, and on account of that conviction is serving a term here in this prison.'

"The reference to the crime for which defendant was confined was unnecessary and prejudicial.

"The judgment is reversed."

In Jones v. State, 88 Ark. 579, 115 S. W. 166, it was held reversible error for the state's attorney to say in his opening statement that the testimnoy would show that this was not the first time accused had taken human life.

In State v. Clark, 160 Iowa, 138, 140 N. W. 821, it was held:

"The criminal record of defendant is not a matter to be referred to in prosecutor's opening statement, nor to be shown in the state's case in chief, but for discrediting his testimony if he becomes a witness."

The general rule is that, when a defendant is put upon trial for one offense, he is to be convicted, if at all,

by evidence which shows that he is guilty of that offense alone. Miller v. State, 13 Okla. Cr. 176, 163 P. 131, L. R. A. 1917D, 383.

The precise question which we are now asked to decide never before has been presented for decision to this court. The case of Prather v. State, 14 Okla. Cr. 327, 170 P. 1176, cited by the Attorney General, may seem to have passed upon it, but in that case the defendant, a convict serving a life term in the penitentiary, took the stand as a witness in his own behalf, and on direct examination testified to the effect that he was serving a life term in the penitentiary. On cross-examination counsel for the state examined him in detail with reference to his former conviction for murder, and brought out the fact that on his trial he had been given the death penalty, and that the death penalty had by the Governor been committed to life imprisonment.

Judge Matson, delivering the opinion of the court, said:

"It will be noticed that on his direct examination the defendant, in detailing the facts and circumstances surrounding the difficulty with the deceased which ended in this fatal stabbing, testified to the effect that he had a life sentence in the penitentiary, and had no way to get pardoned or paroled. It was certainly competent, therefore, on the part of the state to cross-examine him upon any subject which he had detailed in his direct examination, and, having volunteered the statement that he was a life termer in the penitentiary, it became competent for the state on cross-examination to inquire into the nature of the crime for which he had been previously convicted and sentenced. It has been repeatedly held by this court that such is a proper inquiry to affect the credibility of any witness, including a defendant. * * * But we believe it was also competent in this case to establish the status of the defendant as a prisoner in the penitentiary. If he was then serving a term of life imprisonment, it would be no punishment for him for the jury to assess another

penalty of life imprisonment, or any other punishment less than death."

It is a well settled general rule that, where the jury assess the punishment on a verdict of guilty, it is proper to admit evidence which goes only in mitigation or aggravation; however, the aggravating matter must not be of a crime separate from the one charged.

The rule as to matters of aggravation and mitigation is stated in 1 Bishop's New Criminal Law (8th Ed.) § 948, as follows:

"The entire transaction in which a crime was committed may embrace more of wickedness than the indictment charges; or there may be other circumstances of aggravation, on the one hand, or of mitigation, on the other. Therefore, if the law has given the court a discretion as to the punishment, in pronouncing sentence it will look into any evidence proper to influence a judicious magistrate to make it heavier or lighter, yet not to exceed the limits fixed for what of crime is within the allegation and the verdict. Or this sort of evidence may be delivered to the jury at the trial, if with it is the assessment of the punishment. But we have authority for the proposition that in such a case the aggravating matter must not be of a crime separate from the one charged in the indictment—a rule perhaps not applicable where the court determines, after verdict, the punishment."

Evidence of an offense other than the one charged is admissible only when it tends to prove the offense charged. To be competent and admissible it must have some logical connection with the offense charged. Koontz v. State, 10 Okla. Cr. 553, 139 P. 842, Ann. Cas. 1916A, 689.

In People v. Molineux, 168 N. Y. 291, 61 N. E. 293, 62 L. R. A. 193, the Court of Appeals says:

"This rule, so universally recognized and so firmly established in all English-speaking lands, is rooted in that

jealous regard for the liberty of the individual which has distinguished our jurisprudence from all others, at least from the birth of Magna Charta. It is the product of that same humane and enlightened public spirit which, speaking through our common law, has decreed that every person charged with the commission of a crime shall be protected by the presumption of innocence until he has been proven guilty beyond a reasonable doubt. This rule, and the reasons upon which it rests, are so familiar to every student of our law that they need be referred to for no other purpose than to point out the exceptions thereto."

And see Wharton on Crim. Ev. (9th Ed.) § 48; Underhill, Crim. Ev. § 88; 2 Bish. New Crim. Proc. § 1120.

It also appears from the record that the court failed to instruct the jury that such evidence of other offenses committed by the defendant was only to be considered as matters in aggravation in assessing punishment on a verdict of guilty.

For the reasons stated, we are of opinion that the court committed prejudicial error in admitting in evidence the two commitments showing former judgments of conviction. It follows that the defendant's motion to withdraw the same from the consideration of the jury should have been sustained.

This is sufficient to dispose of the appeal; but, in view of the fact that the case is to be remanded for a new trial, we are constrained to say that on a careful examination of the record we fail to find any substantial evidence in support of the theory of the state that the homicide was committed in furtherance of any agreement between the defendant and others or conspiracy to commit a felony; that is, to forcibly break and escape from the penitentiary. Section 1615, C. S. 1921.

To summarize the testimony, it shows without dispute that the deceased came into the dining shed where the defendant and three or four other prisoners were finishing their noonday meal; that he called the defendant a vile name, and struck him with his fist; that the defendant arose from the bench, and the deceased hit him again with his fist; that shortly afterwards, while the defendant was standing watching other prisoners playing cards, the deceased walked up to him and struck him with a hickory stick or cane. It is undisputed that the deceased struck the defendant with his cane, or struck at him two or three times, before the defendant threw the brick. The defendant did not testify.

In rebuttal, Tuck Cope testified: That he was a guard stationed that day in one of the towers at the brickyard. That he could see what persons were in the dining room, and noticed three prisoners, including the defendant, sitting at the tables after the other prisoners had left. That he saw Mr. Mayfield walk in, and heard him say to these boys, "What in the hell are you doing in here? Why don't you get out," Then Mr. Mayfield took the defendant by the collar, and jerked him out of the seat, and slapped him. That Mr. Mayfield slapped him again as he was going out. That he did not hear the defendant say anything to Mr. Mayfield.

The court, over the objection and exception of the defendant, gave the jury the following instruction:

"You are further instructed that, while the law permits a person to defend himself against real or apparent danger, such is a defensive, and not an offensive; and in this connection you are instructed that a person under the law cannot invite and provoke a difficulty and arm himself with a dangerous weapon and slay his adversary, and invoke the right of self-defense, and, if you believe from the evidence beyond a reasonable doubt that this defendant, prior to the homicide, entered into a conspiracy with other

inmates of the penitentiary that he, the said defendant, would invite and provoke a difficulty with the deceased as one of the guards, and would engage said deceased in a fight, and, when said fight was on, other inmates of the penitentiary would assist and help in said fight, and thereby overcome said deceased and other guards in order to effect their escape from the prison, and that in pursuance of said agreement said defendant provoked said difficulty in which the deceased lost his life, then in that event the defendant cannot invoke the right of self-defense as herein instructed. (Excepted to by defendant because the evidence in the case does not justify the instruction.)"

It is elementary that the giving of instructions upon a material issue in the case, not applicable to the evidence, is prejudicial error. Crabtree v. State, 18 Okla. Cr. 125, 193 P. 1005.

The circumstances which distinguish murder from manslaughter have been passed upon by this court in many cases. Where no unfair advantage is taken or deadly weapon used, in such case the slayer can be guilty of nothing more than manslaughter. In this case the issue upon the evidence was manslaughter, or justifiable homicide in self-defense. The record discloses other rulings arising during the course of the trial that would be difficult, if not impossible, to defend.

A person charged with the commission of a crime is entitled to a fair trial, which is but another way of saying, one conducted according to law. From an examination of the whole case we are impressed with the conviction that the defendant was not accorded that fair and impartial trial which the law guarantees to him.

For the reasons stated, the judgment appealed from is reversed, and the cause remanded for further proceedings in accordance with the views we have expressed.

EDWARDS and DAVENPORT, JJ., concur.