## DWIGHT WELCH v. STATE.

No. A-6494.   Opinion Filed Oct. 19, 1928.
(271 Pac. 172.)

H. T. Church, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter called the defendant, was convicted in the county court of Tulsa county, on an information charging that in Tulsa county, on or about the 6th day of February, 1926, he did then and there knowingly, intentionally, and unlawfully, carry, convey, and transport certain intoxicating liquor from one point in the state unknown to the informant to another point in the state, and was sentenced to pay a fine of $50 and be imprisoned in the county jail for a period of 30 days. Motion for new trial was filed and overruled, and defendant excepted. From this judgment and sentence, defendant brought his appeal to this court.

The record in this case presents a very peculiar state of facts. The defendant was charged with conveying intoxicating liquor, yet throughout the record the state went into and presented facts not germane to the charge in this case, but wholly foreign to the charge. In order to properly pass upon the question presented, it is deemed necessary to set forth an abstract of the testimony.

When the case was called for trial the defendant filed a motion to suppress and exclude evidence of W. S. Mayfield, W. E. Pinion, Fred Lawrence, and R. D. Sanford, and other testimony, all offered and introduced in this case, for the reason that all of the evidence and testimony of the state witnesses to be offered and introduced in the trial of the case was obtained and procured against this defendant by reason of an illegal and unreasonable search of the private property of the defendant, said property being one certain Dodge automobile in the possession and custody of the defendant, and that said witnesses searched said automobile and secured the evidence to be introduced in this case by reason of said search; said search being made with-

out a search warrant for said automobile and without a warrant for the arrest of the defendant. Testimony was taken upon the motion to suppress, at the conclusion of which the court overruled the motion, and defendant excepted. The court ordered a jury impaneled and the trial to proceed, which was done.

The county attorney, Mr. Coffey, in his opening statement to the jury, among other statements, made the following statement:

"The evidence on the part of the state, gentlemen of the jury, will show that on the 4th day of February, 1926, R. D. Sanford, the sheriff of Tulsa county, together with two of his deputies, W. S. Mayfield and Mr. Fred Wallace, went to the home of the defendant for the purpose of executing a search warrant.

"Mr. Church: Now, if the court please, the defendant objects to the statement of the county attorney as to the purpose for which they had gone to the home of this defendant, as being incompetent, irrelevant, and immaterial, and not tending in any way to prove the guilt or innocence of this defendant, and as being highly prejudicial to this defendant.

"The Court: Overruled.

"Mr. Church: Exceptions.

"Mr. Coffey: That they went into the house and searched the place, and that the defendant was not at home at that time."

The record further discloses that, at the conclusion of the statement of the county attorney on behalf of the state, the defendant made the following motion:

"The defendant at this time moves and requests the court to instruct the jury to disregard the statements of the county attorney as to the search of the premises of the defendant. It not having been stated or not having been shown that they had any search warrant for liquors, and it not having stated that the search warrant was to

search this defendant's automobile, and the specific purpose of the search warrant not having been stated.

"Mr. Coffey: We would be glad to state it."

W. S. Mayfield, as a witness for the state, was called, and stated that he was a deputy sheriff, and that he knew where the defendant resided on the 4th of February, 1926, and that he saw him on that date.

"Mr. Church: At this time the defendant objects to any further testimony in this case, especially of this witness W. S. Mayfield, for the reason that all of the evidence obtained against this defendant was obtained in violation of his constitutional rights against illegal searches and seizures, and by reason of the search of defendant's automobile; said search having been made in the nighttime, and without a search warrant for the automobile, and without a warrant of arrest for this defendant."

Which objection was by the court overruled, and defendant duly excepted. Witness, in substance, then testified: We went there that night about 11 or 11:30 with a property search warrant.

Defendant objected to this statement of the witness on the ground that it did not tend to prove the guilt or innocence of this defendant on the specific charge of transporting liquor, and defendant further objected that a search warrant itself was the best evidence. The court overruled his objection, and defendant excepted. Witness further stated that he had a search warrant for some automobile cases, stolen property. Defendant then moved the court to instruct the jury to disregard the answer of the witness, for the reason that it was prejudicial to the rights of the defendant and in no way tends to prove his guilt or innocence of the charge for which he is on trial, and being highly prejudicial; which objection was overruled by the court, and defendant saved an exception.

Witness then went into detail, stating that, when they came to the home of the defendant, there was no one

at home but the defendant's mother; they searched the premises, a little two-room house, searched around and went down to the barn; the barn was a little bit south of the house, about 50 or 60 steps; "I was looking the barn over and was about to give it up; some of the others or maybe all of them went out to the car; the car was headed into the entrance at the wire gate; I started back to the. car coming from the south."

Defendant renewed his objection to the testimony of the witness, on the ground that it was not responsive to the question asked, but a detailed statement that is purely voluntary. The objection was overruled, and defendant duly excepted.

Witness stated that a car was coming from the south at a very rapid rate of speed; "I was starting to our car when he runs up opposite to me and slowed down, almost stopped, and then put on speed and run past Mr. Sanford's car; and I ran to the car; we jumped in the car and followed him; the road had just been paved very recently, and over about a half mile beyond his place was the end of it; we met him coming back; I recognized him; when we come back to the front of the house there was the car; it had run cater-cornered the road, and I jumped out of the car and ran around, and he was gone; the door was open, and there was a bottle laying on the running board; I proceeded to search the car, me and the. rest of the boys; we found seven pints of whisky in the hood of the car all wrapped up separately in newspapers."

The defendant objected to what was found in the car until it was first shown they had a search warrant authorizing them to search the car. The objection was overruled, and defendant duly excepted. The witness further stated they found two pints in the car wrapped in papers in behind the cushions. County attorney then asked the witness the following question:

"Mr. Mayfield, how many tires, automobile tires, did your search warrant mention?

"Mr. Church: That is objected to for the reason that the search warrant itself is the best evidence.

"The Court: Sustained.

"Mr. Coffey: Well, we will have to get the search warrant. (By Mr. Coffey) Do you know what court the search warrant issued out of? A. My recollection is it is the common pleas. I am not sure, however, because I did not issue it. It was issued.

"The Court: What is the purpose?

"Mr. Coffey: If your honor please, under the law if a felony has been committed the officers know about it; they have the right to arrest with or without a search warrant."

At this stage of the trial the court excluded the jury from the courtroom, and the question was discussed back and forth between the court, county attorney, and counsel for the defendant; the court advising counsel that he would hold that the search warrant was not necessary, and that the question of the tires and a felony that had been committed there was immaterial, as we are not trying the defendant on a felony charge, the court stating to counsel that he would hold everything was admissible as to what he had there, meaning the defendant. The record discloses the jury was returned into open court, and the trial proceeded. The witness stated that he did not taste the contents of any of the bottles that were found; he smelled of it was all. He stated it contained corn whisky; that they found the defendant's marriage license in the car.

On cross-examination, the witness stated they brought the marriage license to the city in the car; they did not know whether they were turned over to the defendant or not; that they did not have a search warrant for the marriage license, or to search for liquor; that his search warrant was a property search warrant; he did not know what it covered; he only knew it was a property search warrant

and covered the premises of "Easy Welch"; the mother of the defendant was all that was at home when they arrived at the place that night; "we was finishing our raid when we saw the defendant; we did not get anything from that raid of the premises; our car was headed right into the gate in front of defendant's home; I judge we followed him a half a mile to where he turned around and came back; turned around at the end of the pavement and come right straight back; I could not tell just how far behind we were; his lights apparently was out; I don't think we pursued the car more than a mile, I think a half mile; yes sir; I knew who he was; we had no warrant for the arrest of the defendant, still we pursued him; we did not know what the car contained at that time; I did not know what was in the car until we went up to it and looked into it and examined it; there was one bottle on the running board, and then we raised the hood and found seven pints in and around the engine under the hood; I could not have sworn it was whisky until I smelled of it; I did not taste it, I just smelled of it; I will not say I smelled of the other bottles I found there; I did not taste them; they were destroyed."

J. F. Lawrence, called on behalf of the state, testified in substance, as to the same facts as the witness W. S. Mayfield, except he did not claim to have smelled the contents of the bottle, and the same objections, in substance, were interposed by the defendant as to his testimony, and the same motions made to exclude it from the jury.

The foregoing is, in substance, the testimony that was introduced by the state. At the conclusion, the following motion was made by the defendant:

"Defendant at this time, at the close of the evidence introduced on behalf of the state, and after the state had rested its case, moves the court to direct the jury to return a verdict of not guilty, for the reason that the evidence is insufficient to warrant the jury in convicting the

defendant on this charge. And for the further reason that all the evidence introduced in the trial of this case against the defendant, was obtained illegally and in violation of his constitutional rights against illegal searches and seizures; the evidence obtained by the search of his private automobile without a search warrant to search the automobile, and without a warrant of arrest for this defendant."

Which motion was by the court overruled, and defendant excepted. The defendant took the stand in his own behalf, and stated that he had driven to the city of Tulsa that evening in company with Dan Baker; that while there he had gone to see his bride to be, and had driven around the city with friends for quite a while before returning home; that he had granted permission to a friend of his to use the car while he was there, and told him where to leave the car; he had already secured his license to get married, and had them with him when he returned home that evening; that his boy friends had been threatening to have fun with him, and when he drove up to the house and saw the car he thought perhaps it was some of the boys that had been threatening to have some fun with him because he was going to get married, and he drove up the road, and, when he saw the car following him, he turned and drove back home again and parked his car, still thinking it was some of the boys, and went off and secreted himself so they could not find him; after the car was gone and had taken his car with it, he learned from his mother the officers had been there that evening, and that was the first information he had they were officers. Defendant claims that he did not know there was any whisky in his car; his marriage license was never returned to him; that he afterwards got a dulicate of his marriage license from the clerk and was married to the young lady that was with him the evening of this alleged offense. His wife testified as to defendant being out to her home that evening; that she and defendant, together with two other friends,

drove around the city for some time, when the defendant left for the purpose of returning to his home.

Dan Baker testified to returning to Dawson, near the defendant's home, with the defendant, on the evening of the alleged offense. The record shows the defendant was not arrested for several days after the offense, and that he did not show up until he had arranged for his bond. This is, in substance, the testimony on behalf of the defendant.

A number of errors are assigned by the defendant in regard to the admission of certain testimony. Notwithstanding the objection and exceptions of counsel for the defendant, the court permitted W. S. Mayfield and J. F. Lawrence to testify in reference to the property search warrant which they claimed to have had to search the home and premises of the defendant.

The court further permitted the county attorney to make a statement as to the officers going to the defendant's home on the night of the alleged offense with a search warrant. The testimony and objections of the defendant cover several pages of the record. It is rather singular that the state should urge, where a man was being charged with a specific offense of transporting intoxicating liquor, the admission of testimony on a claimed search warrant of the defendant's premises for the property. The state must have known that this was an improper statement for the county attorney to make to the jury, and also must have known that the testimony was incompetent and irrelevant, not being of that character as would in any way whatever throw light upon the facts as to whether or not the defendant was guilty of transporting liquor. No search warrant was introduced, and the only evidence the court had was the statement of the witnesses, and, if it be true, which this court does not undertake to say whether it is or not, it had reference to a separate and distinct claim, entirely

disconnected with the offense with which this defendant was charged. Generally speaking, the evidence of other crimes is competent to prove the specific crime charged, when the evidence tends to establish a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, or to connect the defendant with the commission of the crime charged.

The statement of the county attorney and the evidence objected to does not fall within the general rule. All of the testimony of the state, with reference to the search warrant, was clearly inadmissible against the defendant on the charge for which he was tried, and his objection to the statement of the county attorney and to the admission of the testimony was well taken, and the court should have admonished the jury not to consider it. The statement of the county attorney as to the search warrant, and the statement of the witnesses as to the search warrant, we think prejudiced the rights of the defendant before the jury and deprived him of that fair and impartial trial guaranteed to him under the Constitution and laws of this state. Miller v. State, 13 Okla. Cr. 176, 163 P. 131, L. R. A. 1917D, 383; Koontz v. State, 10 Okla. Cr. 553, 139 P. 842, Ann. Cas. 1916A, 689; Call v. State, 39 Okla. Cr. 264, 264 P. 643.

The defendant further urges that the evidence in this case was inadmissible, for the reason that it was unlawfully obtained by the witnesses searching his car without a search warrant to search the car or without a warrant for his arrest. The testimony discloses that the officers were on a public highway near the home of the defendant, where they had a perfect right to be, and that the defendant was driving on the highway, coming up near to his home, and then driving on following the highway for a certain distance, estimated at one-half to a mile. The officers claim that, when the defendant continued to drive along the highway, they jumped in their car and followed him, and when

he came back toward the house they turned and pursued him until he got back to the house, where he got out and left the car standing on the highway. Witnesses claim they rushed up to the car, and that one of the doors of the car was open and a bottle was laying on one of the running boards of the car. The officers admit they did not have a warrant to arrest the defendant and they did not have a search warrant to search his car. It would seem that an effort was made to justify the searching of the car by saying that a bottle was on the running board of the car. This court has no desire to criticize the acts of the officers when in proper discharge of their duty but we feel constrained to suggest that it is most unusual, if the testimony is to be believed, that the defendant had driven his car at least a mile hurriedly, that a bottle would continue to stay on the running board, when there is no proof to show that it was in a container or fastened in any way whatever. We feel we have a right to consider the physical facts, and that it is hardly probable that the bottle would remain on the running board of the car with the car being driven and turned at a rapid rate of speed, but, for the sake of interpreting the record in this case, grant that there was a bottle on the running board at the time the officers came up to where the defendant had stopped his car, that alone would not be sufficient to justify the officers in making the pursuit they admit they did without any authority. If officers of the law are to be permitted, when they are out on the highway and see a car, some one driving by in a car, to act upon mere suspicion that there may be an offense committed and pursue the parties driving the car until they desire to stop, and when they do stop and leave their car, then without authority go up and search the car, then the guaranties of the Constitution amount to nothing.

Defendant had a right to be on the highway; had the right to drive any direction he desired; he was not required to stop at his home unless he desired to do so. The officers

had a right to be on the highway, but we do not think they had the right to pursue the defendant without knowledge that he was violating the law.

The next question to be considered is, If the following by the officers and coming upon his car is to be approved, is the testimony sufficient then to warrant a conviction? 'The witnesses admit they did not know what was in the bottle they found. Only one of the witnesses undertakes to say what the contents of the bottle was; he attempts to swear that the contents smelled like whisky; he admits he did not taste it. The other witnesses testified only to the number of bottles they found in the car; made no effort to say what the contents of the bottles were; and the only witness who stated it was whisky stated that he smelled of it and that it was whisky. The one witness who testified that he smelled of the bottle does not attempt to say what was in the other bottles if anything. If these officers found whisky in this car, why was it not presented in court? There should have been at least some of it preserved for evidence. When the officers began to follow the defendant in his car, they began an effort to search, and continued it up until the time they claim they found the bottles.

In Thomas et al. v. State, 32 Okla. Cr. 57, 240 P. 133, the sheriff testified as follows:

"We were walking around in the road when we heard parties advancing and we stepped into the timber. It seemed to be some other parties, I heard them say something about some whisky; we walked back out to the road and stopped Jim Thomas and Bill Barnard in the front car; about that time I heard something break. I found a broken fruit jar in the front of the car and something running on the floor. I presumed it was whisky from the smell of it."

On cross-examination, he said:

"Now it smelled like corn whisky, but I do not know what it was."

In this case the witness undertakes to say that he smelled one of the bottles, and that it smelled like whisky. That was the only thing upon which he based his evidence as to the contents of the bottle being corn whisky.

In Klein v. State, 26 Okla. Cr. 173, 223 P. 201, the court, in paragraph 3 of the syllabus, says:

"In a prosecution for transportation of intoxicating liquor, evidence obtained by search of defendant's automobile without a search warrant held inadmissible, in view of Const. art. 2, § 30."

In Taylor v. State, 36 Okla. Cr. 431, 255 P. 157, this court said:

"At the time charged in the information certain officers intercepted the defendants in an automobile upon the public highway and attempted to stop them. When they did not promptly stop, they fired into the car in which they were driving and then arrested the defendants and searched the car and found in it a jug of whisky. They had no warrant for the arrest of defendants nor any search warrant, and the apprehension and search was based on suspicion only. This was in violation of the Constitution and statutory rights of defendants and was seasonably objected to. The conviction cannot be sustained.

The evidence in this case is challenged on the ground that it was unlawfully procured, and on the further ground that it was insufficient to sustain a conviction. We hold that the evidence in this case was obtained by the officers by an unlawful search and seizure and contrary to section 30, art. 2, of the Bill of Rights, and was improperly received in evidence in violation of the defendant's rights.

The last contention of the defendant is as follows: That the evidence relied on to establish the defendant's guilt, even if its competency be admitted, wholly fails to do so. We think that is well taken. The evidence is wholly insufficient to sustain the judgment.

For the reasons stated, the judgment appealed from

herein is reversed, and the cause remanded, with directions to dismiss.

DOYLE, P. J., and EDWARDS, J., concur.