# HERMAN FOX DAVIS v. STATE.

No. A-5278.   Opinion Filed June 27, 1925.
(237 Pac. 471.)

110

W. R. Withington, for plaintiff in error.

George F. Short, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for the State.

EDWARDS, J. For brevity and convenience, the plaintiff in error will be referred to as defendant. On November 9, 1923, Paul McCarthy was shot and killed near the corner of Twentieth and Robinson streets, Oklahoma City. The shooting occurred at about 11:25 p. m. The de-

ceased, a lawyer, was called from his home by telephone just before the shooting. On the 27th day of December, following, the defendant made a sworn statement, in effect, charging Frank Brumley and Eustace Knight with the crime. The defendant, Brumley, Knight, and one Tom Rudolph were jointly charged with the murder of McCarthy, and a severance was taken.

The defendant was an ex-convict, as was also his codefendant, Brumley; they had known each other in the penitentiary. It is the contention of the state that the defendant, on or prior to his release from the penitentiary, conceived the idea of organizing a gang of hi-jackers and bank robbers; that he planned and procured the release of Brumley from the penitentiary, where he was serving a 40-year sentence, to work for him as a hi-jacker and robber; that he, Brumley, Rudolph, Knight, and the witness Cutler hung about the Daniels Hotel and planned hi-jacking or robbery of different persons, and that the defendant was the brains of the gang; that after the death of McCarthy, which was brought about in robbing him, the defendant became alarmed at the affair, and, being fearful that some of the gang would confess and implicate him, decided to make the first statement with a view of clearing himself from the transaction.

The theory of the defendant is that while he associated with Brumley, Knight, Rudolph, Cutler, and others, and had heard them talk and plan crimes, that he was not connected with them in any conspiracy and was not present at the time of, and had nothing to do with, the killing of McCarthy. Before the trial of the defendant, Knight and Rudolph had pleaded guilty to the charge of murder of McCarthy, and had been sentenced to life imprisonment. Brumley had stood trial, had been convicted, and sentenced to life imprisonment.

Rudolph did not testify at the trial of the case. Brum-

ley and Knight testified against the defendant, bearing out fully the theory of the state. The defendant testified in his own behalf, denying any connection with the murder of McCarthy, and offered evidence tending to prove an alibi. After the verdict of the jury, a motion for a new trial was filed and overruled, and appeal regularly taken. Numerous assignments of error are argued in the brief; they may be summarized under the following heads: First, error of the court in failing to instruct on the law of alibi; second, error of the court in admitting incompetent and immaterial evidence, under which assignment various specific objections are discussed; third, error in the court's instructions; fourth, error of the court in permitting codefendants to be seated near defendant during the closing argument, and thereby arousing the passion or prejudice of the jury; fifth, error of the court in failing to give requested instructions (there being several assignments under this head); sixth, insufficiency of the corroboration of accomplices testifying for the state.

We consider first the contention of the defendant that the court erred in failing to instruct on the law of alibi. The defendant requested an instruction upon this point; the request, being substantially in the form set out by this court in the case of Thompson v. State, 6 Okla. Cr. 50, 117 P. 216. If, under the evidence and the rule, as laid down by this court, the defendant was clearly entitled to an instruction under the law of alibi, the failure of the court to so instruct is error. It is fundamental that a defendant, in a criminal case, is entitled to an instruction defining the law applicable to his theory, where there is competent evidence reasonably tending to substantiate that theory. Reed v. State, 3 Okla. Cr. 16, 103 P. 1070, 24 L. R. A. (N. S.) 268.

This general rule covers the defense of alibi, and where alibi is the sole defense, and the proof tends clearly to establish such defense, it is the duty of the trial court to instruct

on the law of alibi, and particularly is this so when a request for such instruction is made. Ayres v. State, 21 Tex. App. 399, 17 S. W. 253; Courtney v. State, 10 Okla. Cr. 589, 140 P. 163. While this is the correct rule, an instruction on alibi need not be given in every case where the evidence may tend to prove an alibi. 16 Corpus Juris, p. 977, states the rule in this manner:

"Such an instruction, however, need not be given where there is not sufficient evidence to support it, * * * or where, because of a conspiracy between defendant and another to commit the crime, it makes no difference whether the defendant was present or not when the crime was committed. * * *"

Applying the rule here stated, and the holding in the Courtney Case, supra, the proof must tend clearly to establish such defense, otherwise it is not necessarily error for the court to refuse an instruction on alibi. It follows that, unless the evidence clearly establishes that, at the time of the commission of the murder, charged in the information in this case, the defendant, with ordinary exertion, could not have been present, it was not error to refuse the requested instruction. Or if the evidence is sufficient to show a conspiracy between the defendant and others to commit the crime charged, and the presence of the defendant at the time of the murder was not essential to his guilt, such state of facts would not require the giving of an instruction on alibi, although the evidence might tend to show he was not present when the crime was committed.

The evidence, that defendant was at a different place at the time of the homicide, rests on his own testimony and on the testimony of one Wheeler and wife, who testify that they talked with defendant near the Criterion Theater about 9 or 9:30 p. m., on the night of the homicide, and on the evidence of one Cutler, night clerk at the Daniels Hotel, who testified that defendant came to the hotel between 10 and 12 p. m., and that he (Cutler) was suffering with hic-

cough, and defendant called up physicians and procured a prescription for him, and the evidence of Dr. Mahr that the defendant called him up and informed him that he had a friend suffering with the hiccough; that he prescribed for him over the 'phone; that the call was between 10 and 11 o'clock p. m., and the evidence of Dr. Dardis that he was called up by the defendant. His evidence was to the effect that he was visiting a patient on Twenty-third and Robinson; left there a short time before 11, went directly to his home on East Sixteenth street; learned that he had had a call, and about 20 minutes after he got there received a call from the defendant Davis in reference to a friend with the hiccough. The defendant in his testimony does not fix clearly the time at which the calls were made.

In the case of Inklebarger v. State, 8 Okla. Cr. 324, 127 P. 707, it was held not reversible error to fail to give an instruction on alibi, unless clearly established by the evidence. But in that case, there was no request for such instruction; in discussing this point the court said:

"There is no evidence that appellant could not have been at the farm on the day of February 15th, and at the prosecuting witness' house that night, or during the night the property was stolen. The distance was 22 or 24 miles, and appellant could have been at both places within a day's time."

And the court cites with approval State v. Shroyer, 104 Mo. 441, 16 S. W. 286, 24 Am. St. Rep. 344; Schultz v. State, 88 Neb. 613, 130 N. W. 105, 34 L. R. A. (N. S.) 243; Barbe v. Territory, 16 Okla. 562, 86 P. 61. See, also, Williams v. State, 123 Ga. 138, 51 S. E. 322.

The evidence in this case places the defendant some 20 blocks or such a matter from the scene of the homicide just prior to the time of the crime charged; it does not show an impossibility of his presence at the scene of the crime at the time of its commission. It is also the law that even

though the evidence should show that the defendant was not present at the time of the killing, but should show that the defendant was in a conspiracy with those who did the killing, as result of which the killing took place, he would be a principal and equally guilty, though not present. In such case an instruction on alibi would not be proper. In this case there was considerable evidence tending to prove a conspiracy to commit robberies or hi-jacking. Some of the evidence shows that it was proposed to rob one J. Q. A. Harrod and his wife, one Glitsch and the deceased, McCarthy. In the sworn statement made by the defendant on the 27th of December, this is mentioned by the defendant, but he puts the initiative on Brumley and Knight. The suggested conspiracy did not go to the slaying of McCarthy, but merely to robbery or hi-jacking indiscriminately with the names of several prospective victims suggested. The jury in this case may have believed that the defendant was not present at the time of the killing, but may have further believed that the killing was the outgrowth of a conspiracy in which the defendant was a party. Under this view of the case, the defendant would not have been entitled to an acquittal because not present at the time of the homicide, and would not be entitled to an instruction on alibi. We are constrained to believe that the refusal of the court to instruct on alibi under the record is not reversible error.

Considering the second assignment made by defendant, i. e., the admitting of incompetent and immaterial evidence prejudicial to the defendant, it is first argued that the evidence of one Edith Roff, a manicurist, that the defendant had suggested to her that she procure married men to go out with her in a car that they might be hi-jacked, is incompetent, and is not connected with the charge against the defendant and tends to prove a different offense entirely. This contention is argued with much force and at some length, citing the following authorities: People v. Williams, 127 Cal. 212, 59 P. 581; Hawkins v. State, 185 Ind. 147, 113

N. E. 232; People v. Steinkraus, 291 Ill. 283, 126 N. E. 202; People v. Molineux, 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193; 1 Wharton's Criminal Evidence (10th Ed.) p. 60; Miller v. State, 13 Okla. Cr. 176, 163 P. 131, L. R. A. 1917D, 383; Koontz v. State, 10 Okla. Cr. 553, 139 P. 842, Ann. Cas. 1916A, 689.

It is earnestly urged that the evidence of Edith Roff had reference to a proposed crime entirely different from the offense charged, and one that defendant was not prepared to meet, and which necessarily prejudiced the jury against him. To our mind, however, there is a clear distinction between the cases cited and the principle announced therein and the case at bar. Here the theory of the state is that the defendant was organizing and organized a gang to rob and hi-jack persons. It is not the theory that the defendant and his accomplices were conspirators solely in the killing of McCarthy, but that the killing of McCarthy was an incident to the conspiracy formed, and while the charge was for his murder, yet proof of the conspiracy might properly take a wider range, and any evidence tending to prove conspiracy, motive, or the connection of the defendant with his codefendants, Brumley and Knight, leading up to the murder, was material and competent. Proof of the commission of a particular crime charged cannot be made by proving the commission of some other similar but disconnected offense, but the testimony of the witness is of statements made by defendant in the presence of, or to, his codefendants. It was not proof of a separate crime or a proposed crime, but proof of the organization of the conspiracy, of defendant's connection with it, and the intent of the parties. The evidence of Edith Roff was competent and material under this view of the case.

Further, under this assignment, it is contended that there was error in permitting the witness Brumley to state the substance of a telegram sent him by the defendant

without a sufficient accounting for the original. While the witness testified he did not have the telegram, this was not a sufficient showing to authorize the proof of the contents of the telegram. But, while the defendant was on the stand, he admitted the sending of the telegram and its contents, and the error of its admission is not prejudicial.

It is also argued that the testimony of the witness Eads, in which he was asked about statements presumed to have been made by Brumley after the commission of the offense charged, and while in jail, to the effect that he was going to tell the truth, is incompetent and prejudicial. Objections were made to the question and overruled. They should have been sustained, since the declarations and conduct of the coconspirator made and done after a conspiracy has terminated and not in the presence of his coconspirator are not admissible in evidence against him. Burns v. State, 8 Okla. Cr. 554, 129 P. 657; Koontz v. State, supra; Sturgis v. State, 2 Okla. Cr. 362, 102 P. 57; Smith v. State, 20 Okla. Cr. 362, 202 P. 1046. However, the witness stated that he did not remember any such statement having been made to him by Brumley. The error in propounding the question and overruling the objection, in view of the answer of the witness, is not reversible.

The defendant further assigns error in instruction No. 8 of the court's charge as follows:

"You are further instructed that some evidence has been permitted to go to you in which the state attempts to show that previous to the homicide in question, an attempt was made to rob one H. and other persons; in this connection, you are charged that the defendant is not on trial for such offense, and the only purpose for which you will consider such testimony is to show the intent, if any, of the defendant of the particular crime charged in the information against him in this case, and for no other purpose."

The complaint is made that the use of the word "at-

tempt" was prejudicial, and that there was no evidence of any attempt to rob. We perceive no error in the instruction as an abstract proposition of law. Its purpose was to limit the application of evidence suggesting other offenses to show intent in the offense charged, and was beneficial to the defendant. It is true the tendency of the evidence technically considered did not go to the extent of an "attempt." The charge, as applied to the facts, would have been better expressed by using the words "plan" or "design" instead of the word "attempt." We think, however, that the jury could not have been misled by the use of the word "attempt," and could have understood the charge in no other sense than that they were not to consider reference to other proposed offenses, except in so far as they should throw light on the connection of the defendant, or show the intent of the parties in the crime for which he was on trial.

Error is next predicated on the fact that, in the closing argument, the sheriff seated Knight and Rudolph in the courtroom near the defendant. This, defendant contends, suggested a contrast to the jury, and was calculated to arouse passion and prejudice against him. No reference to these codefendants was made by the counsel for the state in the closing argument, nor any suggestion of their presence indicated by gesture or otherwise. Any conduct on the part of the prosecution or others in the course of the trial calculated to arouse the prejudice or passion of the jury and to prevent an accused from having a fair trial is not to be tolerated, and, where such appears, it is the duty of the court to set aside a conviction and grant a new trial. Knight had already been before the jury and had testified at length. Rudolph had been before the court and had pleaded guilty, but had not been called as a witness for either the state or the defendant. His connection with the case had been detailed in the evidence, and we do not perceive why his mere presence would tend to inflame the jury against

the defendant. It would seem as reasonable to suggest that their presence might be beneficial to the defendant, suggesting to them that they were the confessed criminals.

In 16 Corpus Juris, p. 810, the rule is laid down as follows:

"The presence in the courtroom during trial of other persons under indictment for the same offense, but who are to be tried separately, is within the discretion of the court. * * *"

Citing in support of the rule, Cunningham v. State, 56 Neb. 691, 77 N. W. 61, where it was said:

"During the trial of Cunningham, Evans was brought into and kept in the courtroom by order of the court. It is now insisted by Cunningham that this was a practical re-trial of Evans, and that, since separate trials had been awarded Cunningham and Evans, the action of the district court was erroneous. We do not think it was. The fact that Evans was permitted or compelled to remain in the courtroom during the trial of Cunningham was in no sense a retrial of Evans."

Further citing Parnell v. State, 50 Tex. Cr. R. 419, 98 S. W. 271, where the court used this language:

"We know of no law that would require the court to have all of appellant's codefendants to sit in the courtroom during the trial of either. It would not be amiss to do so, but there is no law requiring it."

This contention is not tenable.

Next it is argued that the court erred in refusing to give certain requests for instructions made by the defendant. We have examined this assignment at length and considered the argument and authorities cited in support of them, and, without going into detail in discussing them, we find that they were either not applicable or were covered

in substance by the court's charge, and that the instructions as a whole fully and fairly submit the issues presented.

Lastly it is argued that there is not sufficient corroborating evidence to support the testimony of Knight and Brumley, who, under their testimony, were accomplices of the defendant. There can be no controversy nor serious difference on the rule of law in this state that a conviction cannot be had upon the uncorroborated evidence of an accomplice. It is not sufficient corroboration to merely connect a defendant with the accomplice in crime, but evidence independent of the testimony of the accomplice must tend to connect a defendant with the crime itself and not simply with its perpetrators. State v. McKinney, 20 Okla. Cr. 134, 201 P. 673; State v. Wilks, 17 Okla. Cr. 247, 187 P. 813; Weaver v. State, 22 Okla. Cr. 414, 211 P. 1062; Kirk v. State, 10 Okla. Cr. 281, 135 P. 1156.

We have gone over the testimony at length and while the evidence, other than that of the accomplices, and the written statement of defendant, is circumstantial, we think that the circumstances and the inferences, that arise, and are reasonably to be drawn from them, are amply sufficient to satisfy this rule. To set out the various items of evidence, tending to connect the defendant with the commission of the crime, would render the opinion unduly lengthy, and would serve no particular purpose. The defendant was ably represented. His case was well presented both in the lower court and in this court by oral arguments and briefs.

Finding no error that would warrant a reversal, the case is affirmed.

BESSEY, P. J., and DOYLE, J., concur.