## EDGAR PEARSON v. STATE.

No. A-6601.  Opinion Filed July 20, 1929.
(279 Pac. 700.)

20

W. T. Powell, for plaintiff in error.

Edwin Dabney, Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, the defendant in the lower court, is under conviction for unlawfully transporting intoxicating liquor, with punishment fixed at a fine of $250, and imprisonment in the county jail for a period of 60 days. The defendant has appealed to this court from the judgment rendered against him.

To the charge in this information the defendant entered his plea of not guilty. A jury was selected, impaneled, and sworn, and the state, to sustain the allegations in the information, produced witnesses who testified in substance as follows:

S. E. Cook, called as a witness, stated:

"I am a deputy sheriff; I saw Edgar Pearson on the 23rd day of December, 1926, at the East Cache bridge east of town; I saw the defendant come from the direction of the creek bank to his car and then go out in the section line, and was standing there in the road talking to some one. He then came back to his car, and I drove up and asked him if he had a tag on his car, and he said no;

I advised him I had been instructed to arrest him for failure to have a tag, and he said he would come into town and pay the penalty; I told him I wanted to look into his car and he asked me if I had a search warrant, and I said no, I didn't need it as he was under arrest, and I looked into the car and did not find anything. Defendant went to take the lady that was with him to Mr. Smith's place; after he left I followed tracks under the bank of the creek on down the creek and to the left side of a cottonwood tree, where I found a shoe box and in the box there was a half gallon of whisky. The tracks went from the bank near the car to where the whisky was in the box."

The state then offered its Exhibit A, which was shown to be a half-gallon jar claimed to have been found by the cottonwood tree near where the defendant was seen. The state then asked who the woman was, and he answered, Majorie Sides. The witness was then asked questions with reference to going to defendant's home with other parties and searching the same—all of which testimony was offered over the objection of the defendant, and the defendant duly excepted; the substance of the testimony being that under some kind of an agreement between the defendant and the county attorney they went to defendant's home, and the witnesses were permitted to testify as to finding empty beer bottles, flasks which witness stated were whisky flasks, a 16-gallon keg, some hops, a crock, box with tin cans in it, and a copper container which witnesses were permitted to designate as a part of a still. The defendant objected to the testimony of the witnesses and the introduction of the articles found at his home, on the ground that the testimony did not tend to prove the charge in the information of transporting whisky, and, after his objection was overruled and the testimony admitted, the defendant moved "to strike from the record the testimony about what was found at defendant's home for the reason that it is incompetent, irrelevant and immater-

ial, most of the stuff the witness had testified about is used in the manufacture and not transporting of whisky. The defendant is charged with transporting and not the manufacture of whisky. Which motion was overruled and defendant duly excepted."

The state was then permitted, over the objection of the defendant, to go into the question of the experience of the witness as to the confiscation of stills, and as to whether or not the things found at defendant's home are ordinarily used for the making of whisky, and for the manufacturing of liquor—which objection of the defendant was overruled and exceptions allowed. Several pages of the record are taken up with the offering of different articles found at the defendant's home; over the objection of the defendant, and the overruling of the objection by the court, and defendant's exceptions. All of the testimony offered with reference to the things found at defendant's home did not in any way tend to prove the charge of transporting whisky against the defendant, but only tended to show they could be used for other purposes. Witness then detailed what he said to the defendant at the time he came to the car near the bridge, telling him, in substance, that he had been sent out to arrest him for driving his car without a license tag.

The next witness for the state was W. C. (Bart) Claibourne; he stated he was assisting the sheriff as a peace officer, and in substance testified to the same facts as the witness S. E. Cook, and stated that, after the defendant had taken the lady in the car with him to the home of Mr. Smith, they went down under the bank of the creek, and by a cottonwood tree they found a shoe box, in which was a half gallon of whisky. On cross-examination Mr. Claibourne stated that, when he saw

the defendant starting out from town, he was coming from the south side of Walters, and did not come from his home. There was nothing peculiar about the cotton-wood tree where he claims the whisky was found in the shoe box, setting against the tree on the west side; it was not covered with anything, and was in plain view; it was about 45 or 50 steps from the east end of the bridge.

The county attorney then testified at length that, after he learned the whisky had been found at the bridge, he asked permission to search the defendant's home, going into detail as to what took place between him and the defendant as to the searching of the home of the defendant. Many statements of the county attorney were contradicted by the defendant in his testimony.

C. O. Hooper was then called, and the county attorney went into detail as to what they found at defendant's home, having him identify the different articles, including, among other things, State's Exhibit J, which seems to have been a small glass, and, over the objection of the defendant, witness was permitted to state that it was the kind of glass that was usually used as a whisky glass. Witness also stated as to a conversation between the county attorney and the defendant that his recollection was the county attorney told the defendant, if they did not find more than a pint or half pint at his home, there would be nothing to it. The greater part of the record is taken up with testimony about the defendant's home and what they found, describing articles from glasses up to the keg they found out on a workbench in the yard. Upon the question of transporting, the only evidence offered was the evidence of the witness who claims to have followed the defendant out the road and saw

his car parked where there was a parking place near the bridge. They drove up to the car, and told the defendant they had been sent to arrest him for driving a car without a license tag, and he said all right, he would take the lady in the car to the home of Mr. Smith and come back to town, which the proof shows he did, and then they claim they went down the bank of the creek, and by a cottonwood tree they found a shoe box containing a half gallon of whisky. Over the objection of the defendant, many questions were asked regarding the character of the woman that was in the car and about his being a married man.

The defendant called E. P. Haynes as a witness, who testified to seeing the defendant on the 23d day of December, 1926.

"He stopped his car a little southeast of where my truck was parked; the ground was not altogether bare around where the defendant stopped his car; after he went back to his car I saw Mr. Claibourne and Mr. Cook drive up; I did not hear the conversation but I saw them searching the car; there was quite a bit of timber along the creek bank where the car was stopped; the big cottonwood tree near where the car stopped was about 40 or 50 feet from where the defendant stopped his car, and something like 60 or 70 feet from the end of the Cache bridge."

W. M. McAlester was called, and testified he saw Mr. Claibourne and Mr. Cook out near the Cache bridge as he was returning to his home the day of the alleged offense.

"I saw them as they were carrying a half gallon of whisky up the bank of the creek."

The defendant in his own behalf stated he lived four miles west of Walters. About noon, the date of the al-

leged offense, he left Walters to take a lady to the Smith home in the country.

"I put alcohol in my new car, and as I drove along I saw the motor was getting hot, and I stopped about thirty steps east of the bridge to get some water; I picked up a can and made about three trips to get water; Emmett Haynes drove up in a truck while I was there and I asked him where he was going; about this time Mr. Cook drove up and I went to see what he wanted; he said I was charged with driving a car without a license tag, and he was instructed by the county attorney to arrest me; when he started to search the car I asked him if he had a search warrant, and he said he did not need to have a warrant, as I was under arrest; I drove on east where I was going and when I returned Mr. Claibourne was at the edge of town, and we went to the county attorney's office, where we had a conversation with reference to their suspicion that I had been violating the prohibition laws. The county attorney wanted to search my house, and I told him he would probably find a little whisky that I had at home for my wife's medicine. The first knowledge that I had that officers claimed to have found any whisky down on the creek was when I came to the county attorney's office where they had a half gallon of liquor setting on the desk; while in the county attorney's office I talked with the county attorney about the officers being after me for two years and this was the first charge they had brought against me."

On cross-examination the county attorney was permitted, over the objection of the defendant, to ask the defendant with reference to his relations with Majorie Sides, and defendant replied that his relation with Majorie Sides was just like any other friend; defendant was then asked if he was not a married man, and he answered he was; defendant was then asked, "How do you spell Majorie? This writing on the box is Marge. I do not know who wrote this." Defendant was then

asked if he knew what size shoe Majorie wore, and answered, "I could not tell, I never bought her any." All questions along this line were objected to by counsel for the defendant, the objections overruled, and defendant duly excepted. Defendant stated that where he went to get the water was where there had been a ford; that he did not go south from where his car was; he did not know who made the tracks the officers claim they saw that led to where they claim to have found the half gallon of whisky. The defendant was then interrogated at length with reference to articles that had been found at his home.

The defendant has assigned several errors alleged to have been committed by the trial court, the first being:

"That the trial court erred in overruling the motion of plaintiff in error for a new trial.

"2. The court erred in admitting incompetent, irrelevant and immaterial testimony offered on the part of the State over the objection of the defendant, to which evidence the defendant at the time objected.

"8th. The court erred in permitting the county attorney to make improper statements and ask irrelevant questions tending to discredit the reputation of the defendant, and to bring his character in *repute*. Which were objected to by the defendant.

"9th. The court erred in refusing to give the defendant's instruction One, as to the law on circumstantial evidence."

The information in this case charges the defendant with transporting one half gallon of whisky from a certain designated point in Cotton county to another point. The defendant's plea of not guilty put in issue the question as to the guilt or innocence of the defendant for transporting a specific quantity of whisky alleged to have been

transported by the defendant. There was no other question involved in this specific allegation except the question of whether or not the defendant was guilty of transporting the whisky. The question then to be determined by this court is, Is the testimony sufficient to sustain the conviction, and, second, did defendant have a fair and impartial trial, to which he is entitled under the laws and the Constitution of the state of Oklahoma?

Upon the question of the sufficiency of the evidence to convict the defendant, aside from the condition of the record, the proof amounts to nothing more than a suspicion. The testimony of the state fails to show either active or constructive possession of the whisky by the defendant. The only evidence which tends to show that defendant might be the owner is that the defendant had stopped his car on the public highway, where people stopped at will, and had gotten out of the car and was seen by the officers coming from the direction of the creek some distance away where the officers claim they found the whisky. The state's testimony tends to show that the tracks led from where the defendant's car was down to the cottonwood tree where the whisky was found and back up the bank. Defendant's testimony, uncontradicted, explains why he was at the place designated; he was driving a new car, and had put alcohol in it, and found his motor was getting hot, and had gone to the creek to get water to put in his radiator. One or two other witnesses who knew the defendant stopped or passed by while defendant was there, and defendant testified that, when the officers came up to his car, he had made the third trip to get the water, and had the can about half full of water. The state witnesses show that the whisky was in a shoe box, and that it was not concealed or covered with anything, setting by the side of a cottonwood tree.

The defendant denies any knowledge of the whisky they claim was found, denies he was down to cottonwood tree, or that he had anything to do with the placing of the whisky where the officers claim they found it. The proof further shows that, when the defendant left town that day, he came from a southern direction, and not from the direction of his home. It is claimed the officers went out to arrest the defendant on a charge of driving a car without a license tag. So far as this record discloses, when the officers claim they found the whisky down on the creek, and after they had searched the defendant's car and found no whisky in it, the charge of driving without a license tag was abandoned.

The next question to be determined is, Did the defendant have a fair trial, and was any of the testimony that the court admitted over the objection of the defendant, which related to searching defendant's home and taking articles found there, and describing them and permitting the witnesses to give their opinion as to what they could be used for, admissible against the defendant upon a charge of transporting intoxicating liquor? We do not think the testimony of the witnesses with reference to what they found in defendant's home admissible against the defendant where he was charged with the specific charge of transporting whisky, and we hold that the court erred in permitting any of the testimony with reference to the searching of defendant's home and of the articles found, and permitting the witnesses to give their opinion as to what the articles could be used for.

It is fundamental that, where the defendant is put upon trial for one offense, he is to be convicted, if at all, by evidence showing him guilty of the offense charged. The proof of separate and distinct offenses is incompetent and inadmissible unless such evidence is admissible to

show motive, intent, or some recognized exception. Certainly, where the state charges a particular transportation of intoxicating liquors, it is error to admit proof of other facts which might tend to show the defendant guilty of a separate and distinct offense. Wyrick et al. v. State, 37 Okla. Cr. 115, 255 Pac. 163; Miller v. State, 13 Okla. Cr. 176, 163 Pac. 131, L. R. A. 1917D, 383; Stanfield v. State, 30 Okla. Cr. 82, 235 Pac. 256.

The court erred in admitting the evidence of the witnesses as to what they found at defendant's home and in admitting the articles found at defendant's home, over his objections. There is no competent testimony to sustain the conviction.

There are other errors assigned, but it is not deemed necessary to consider them. The case is reversed and remanded.

EDWARDS, P. J., and CHAPPELL, J., concur.