Zachary Taylor ROULSTON, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12400.

Criminal Court of Appeals of Oklahoma.

Feb. 20, 1957.

Hendon & Hendon, Claude Hendon,. Scott Hendon, Shawnee, Holmes Colbert,. Sulphur, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

The defendant was jointly charged in Murray County with Jimmy Buford Edgman with the offense of robbery with firearms. A severance was granted and defendant was tried, convicted and sentenced to serve a term of five years imprisonment in the state penitentiary and has appealed. The evidence on the part of the state that defendant, along with the co-defendant,. Jimmy Buford Edgman and another man not identified and not known by the prosecuting witness, came to the home, which was a trailer house, of Norma Jean Hinchey during the afternoon of the 28th day of July, 1955, around 2 or 3 o'clock, where they purchased some gin and left the premises. Norma Jean Hinchey testified that about 9 o'clock p. m. the same day and after dark, while her husband was up town, defendant Roulston returned to her trailer house with two other men, one whom she only knew as a Mr. Brown and lived in Davis and the other one she did not know. The witness was vague as to whether the men came together or just happened at the same time. Mr. Brown purchased a pint of whisky and the two men left while defendant Roulston stayed. The witness stated "he wanted a half-pint of whisky and when

I went to get it and when I did he pulled a gun out of his shirt and told me to give him the money." I said, "There, it is—it was sitting right there. He took the box." Mrs. Hinchey testified that the box had her name written on it and contained "I believe it was $123.85, I'm not sure." The defendant had witness turn off the lights on the outside of the trailer house and he left. That her husband returned home a few minutes after the robbery and she told him about it and he related the information to the sheriff. That she was later taken to Shawnee where she picked defendant out of a line-up as the man who robbed her.

Leonard Monger, Sheriff of Murray County, testified that he was informed of the robbery by the husband of Norma Jean Hinchey at approximately 9 o'clock. That he obtained the description of the car and the license number "I got from that negro across the street—he gave me a description of it but she never did identify it." That the description of the automobile and the license tag number 13-7333 was sent out on a broadcast shortly thereafter alerting the Highway Patrol and other officers in the area. The sheriff testified he had not seen Roulston previous to the time that he took Norma Jean Hinchey to Shawnee for the purpose of identification and that she positively identified the defendant as the man who robbed her.

Owen William Taylor testified on behalf of the State that he lived in Wynnewood and operated a Texaco Service Station on Highway 77. That the defendant Roulston did on the same night at approximately 9:30 walk up to his place and ask for change for some cigarettes which he gave him. The defendant turned around and asked where the restroom was and "I told him where it was and went back outside and when I turned around he started for his shirt and said something to the effect that 'this is it'. I knew what he meant and I just opened the cash register." That defendant Roulston took a gun out of his shirt and Taylor went to the cash register and gave the defendant the money in the amount of $73.70. That the defendant ordered him

into the restroom, then after he went in, the defendant left.

Lawrence Cruz testified for the State that he ran a service station and cafe in Tecumseh, Oklahoma, and about 11 o'clock a car came through his driveway and upon asking them could he help, one of the men said, "No, they were just passing through". He noticed that the car had a "busted" muffler and about 10 or 15 minutes later he looked out again, and there stood a man who waved at him and said, "What's wrong with the restroom door and when I turned around, he had a gun on me. I don't know what words he was saying but I reached in my pocket and gave him my billfold which contained my money and he kept telling me to take it easy. He told me to go to the restroom and lay down. He began poking me with the gun and I went to the restroom and laid down. He closed the door. When he left, I got up and went outside and he was getting into the car which was parked on the south side of the building and they took off with no lights." The testimonies of witnesses Lawrence Cruz and O. W. Taylor were given over strenuous objection of counsel for the defense which was overruled by the trial judge.

Charley Dawson, Highway Patrolman, testified that on the night of July 28, 1955, he got a general broadcast from the Durant Patrol Station of a 1950 Ford bearing a Seminole County license 13-7333, wanted by the sheriff's office in Sulphur and a short time later he was contacted by the patrol station in McAlester and advised there had been an armed robbery at a service station in Tecumseh. A short time later, there was another armed robbery reported in Shawnee. He was advised of a car of the same description—a 1950 model Black Ford was driving east from Shawnee on Highway 270. That he and patrolman with him stopped the car about a half mile north of Seminole and asked the occupants to get out. The occupants were Edgman and defendant Roulston. That they found a brown box with some money in it and also a .38 Colt pistol and some shells in the

car. That after taking occupants to Seminole, they were searched and found $112.65 on defendant Roulston. Shortly thereafter, they were taken to Pottawatomie County jail at Shawnee. The box was identified by Norma Jean Hinchey as the one taken from her the same night.

With the testimony of these witnesses the State rested. Counsel for the defense then requested the Court to direct a verdict for the reason that the evidence, deductions and inferences to be drawn therefrom, were insufficient to sustain the allegations or show any crime was committed against the State of Oklahoma. The motion was overruled by the trial court and counsel for defendant then moved the Court to strike the evidence of witnesses Taylor and Cruz for the reason that their evidence did not tend to connect the defendant with the crime charged and did not prove intent, plan, scheme or res gestae and was wholly prejudicial to the rights of the defendant. This motion was overruled by the Court and exception saved by defendant.

At this time the defense called witness Z. T. Roulston, father of the defendant, who testified in substance that he had seen the defendant in the vicinity of Vemoosa where he was working on his automobile with a man named Charley Hailey, about 4 o'clock in the afternoon of July 28, 1955. That he had been instructed by defendant Roulston the day before to bring him a hundred dollars on the morning of July 28, 1955, which he delivered to defendant Roulston at his son-in-law's house at Vemoosa which is about 10 miles from Konawa. Testimony of witness Z. T. Roulston was evidently for the purpose of establishing an alibi and to show that Roulston could not have been in Murray County at the time of the alleged robbery.

Emmett Veitenheimer was called as a witness for the defense and testified that he was a resident of Shawnee, a man of family and employed at Tinker Field for Ball Construction Company. That he went to the town of Maud, Oklahoma, about dusky dark or around 8:00 or 8:15 on the evening of July 28, 1955, where he saw defendant Roulston on the street and Roulston waved at him and the witness picked up Roulston and was advised by him that he was going to Oklahoma City. Witness told the defendant that he was going to Shawnee and he could ride with him that far. That they proceeded to the town of Shawnee where the defendant was let out at the intersection of Highways 18 and 270. That the defendant left the witness' car at approximately 9 or 9:15 p. m. and that they were together about an hour and ten minutes. Veitenheimer testified that the defendant was not drinking then and he did not see any weapons upon the defendant. That he had known the defendant for a good number of years and had previously worked with him. Defense then called Jim Harrington as a witness who testified he was Sheriff of Pottawatomie County and lived in Shawnee, Oklahoma. That he saw defendant in the county jail in Shawnee on the night he was apprehended by the Highway Patrol. That he did not notice that the defendant had been drinking and that if he had liquor on his breath, he did not notice it. As far as he could tell defendant was totally sober.

The plaintiff in error bases his appeal upon three assignments of error: 1. (a) The court erred in overruling defendant's demurrer to the information based on duplicity of two offenses as charged, to wit: That of conjoint robbery and robbery with a dangerous weapon; (b) The court erred in overruling defendant's motion to require State to elect, on what charge or offense the case was to proceed to trial, to wit: Whether it be under conjoint robbery statutes or robbery with firearms; 2. The court erred in permitting irrelevant, incompetent and prejudicial evidence and incompetent evidence of two other offenses of robbery allegedly committed by defendant, at two other different times and places following the completion of alleged robbery here charged; 3. (a) That the verdict of the jury and judgment of the court was not sustained on sufficient legally competent evidence, that it was contrary to

law; (b) The court erred in overruling the defendant's motion for a new trial. We shall consider these various contentions of the defendant in the order named. The information herein charged defendant with a crime of robbery with a dangerous weapon and alleges:

"In the name and by the authority of the State of Oklahoma now comes G. Dixie Colbert, the duly qualified and acting County Attorney, in and for Murray County, State of Oklahoma, and gives the District Court of Murray County and State of Oklahoma, to know and be informed that Jimmie Buford Edgman and Zachary Taylor Roulston did, in Murray County and in the State of Oklahoma, on or about the 28th day of July, in the year of our Lord One Thousand Nine Hundred and Fifty Five and anterior to the presentment hereof, commit the crime of 'Robbery With a Dangerous Weapon' in the manner and form as follows, to-wit:

"That Jimmie Buford Edgman and Zachary Taylor Roulston, aiding and abetting each other and acting conjointly and together, in said county and State aforesaid, did, knowingly, wilfully, unlawfully, wrongfully and feloniously, make an assault in and upon one Norma Jean Hinchey with a certain weapon, to-wit: a revolver, then and thereby putting the said Norma Jean Hinchey in fear of an immediate injury to her life and person, by threatening to shoot the said Norma Jean Hinchey, and did then and there by use of said force and putting in fear, unlawfully, wilfully, wrongfully and feloniously and against the will of her, the said Norma Jean Hinchey, take, steal and carry away from the possession and person of said Norma Jean Hinchey certain personal property, to-wit: $126.00 in lawful American money, with the unlawful, wrongful and felonious intent then and there on the part of them, the said Jimmie Buford Edgman and Zachary Taylor Roulston to rob

and deprive the said Norma Jean Hinchey of said property and to convert the same to the use and benefit of the said Jimmie Buford Edgman and Zachary Taylor Roulston; contrary to the form of the statutes in such case made and provided, and against the peace and dignity of the State."

It is contended that since the robbery is charged as having been committed by two or more persons conjointly that the information was duplicitous and charged two offenses—that of conjoint robbery and robbery with a dangerous weapon. And that the court should have sustained defendant's motion to require the State to elect on what charge or offense the case was to be set to trial. We cannot agree with the contention of the defendant in this instance in view of the previous holdings of this court. Simpson v. State, 40 Okl.Cr. 58, 266 P. 783; Wissinger v. State, 39 Okl.Cr. 324, 264 P. 631; Woods v. State, 68 Okl.Cr. 406, 99 P.2d 189, 192. It is well settled by this court in the above cases that the statutes of this state as it pertains to conjoint robbery and robbery with a dangerous weapon are statutes of classification and not of definition. In Woods v. State, supra, a very similar case, it was held,

"Although the information herein cannot be classed as a model, it includes all of the essential elements of robbery with a dangerous weapon and is sufficient to advise the defendant of the charge for which he is being tried, and it is the class of robbery shown by the evidence."

From these cases we must conclude there is but one definition of robbery under the statutes of this state and the latter statute enacted by the Legislature was one of classification and not definition and was merely providing an enlarged punishment for robbery when committed by a person or persons with firearms or other dangerous weapons. It applies whether the robbery is by one person or two or more persons acting conjointly. Richards v. State,

22 Okl.Cr. 199, 210 P. 295; Randall v. State, 33 Okl.Cr. 262, 243 P. 983; Wells v. State, 34 Okl.Cr. 179, 245 P. 1007. It is the opinion of this court that the words "acting conjointly and together" as used in the information herein were descriptive of the crime alleged to have been committed, to wit: "Robbery With a Dangerous Weapon", and was not duplicitous and did not constitute a separate charge as to require the state to elect upon which charge the defendant would be tried.

■ Second assignment of error has been one of the utmost concern of the writer. The court, over the objections of the defendant, permitted witnesses Taylor and Cruz to testify as to other offenses committed by the defendant on the same night in other towns and two separate counties. After much research on the question, it appears to be a well-established rule recognized substantially by all courts that evidence of a separate and similar offense is not admissible against the accused on trial for another specific offense; that, when the accused is put on trial for one offense he is to be convicted, if at all, by evidence which shows him guilty of that offense alone and proof of guilt of one or more similar offenses unconnected for that which he is on trial must be excluded. The foregoing rule is fundamental. This court has so expressed itself many times. Hall v. State, 67 Okl.Cr. 330, 93 P.2d 1107, 1116; Starks v. State, 67 Okl.Cr. 156, 93 P.2d 50; Clark v. State, 66 Okl.Cr. 255, 91 P.2d 686; Michelin v. State, 66 Okl.Cr. 241, 90 P.2d 1081–1082; Janeway v. State, 62 Okl.Cr. 264, 71 P.2d 130; Brockman v. State, 60 Okl.Cr. 75, 61 P.2d 273; McCollum v. State, 57 Okl.Cr. 381, 48 P.2d 872; Quinn v. State, 54 Okl.Cr. 179, 16 P.2d 591, 595; Hughes v. State, 51 Okl.Cr. 11, 299 P. 240; Cole v. State, 50 Okl.Cr. 399, 298 P. 892; Ditmore v. State, 49 Okl.Cr. 228, 293 P. 581; Pearson v. State, 44 Okl.Cr. 19, 279 P. 700; Hill v. State, 41 Okl.Cr. 266, 272 P. 490; Welch v. State, 41 Okl.Cr. 207, 271 P. 172; Perdue v. State, 40 Okl.Cr. 9, 266 P. 514; Wyrick v. State, 37 Okl.Cr. 115, 255 P. 163; Robinson v. State, 36 Okl.Cr. 396, 254 P. 986; Stanfield v. State, 30 Okl.Cr. 82, 235 P. 256; Beach v. State, 28 Okl.Cr. 348, 230 P. 758; Mahseet v. State, 26 Okl.Cr. 176, 223 P. 199; Dumas v. State, 19 Okl.Cr. 413, 201 P. 820; Wisdom v. State, 18 Okl.Cr. 118, 193 P. 1003; Emerson v. State, 18 Okl.Cr. 109, 193 P. 743; Smith v. State, 14 Okl.Cr. 348, 171 P. 341.

■ To this rule, however, there are certain exceptions and though they do not supersede the time-honored precept of law and are to be carefully limited and guarded, have become well established in the courts throughout the land. The difficulty comes in applying the exception in distinguishing what is competent and what is not. The courts have laid down excellent tests and guidance. State v. Gregory, 191 S.C. 212, 4 S.E.2d 1, 4, where that court said:

"Whether evidence of other distinct crimes properly falls within any of the recognized exceptions noted is often a difficult matter to determine. The acid test is its logical relevancy to the particular excepted purpose or purposes for which it is sought to be introduced. If it is logically pertinent in that it reasonably tends to prove a material fact in issue, it is not to be rejected merely because it incidentally proves the defendant guilty of another crime. But the dangerous tendency and misleading probative force of this class of evidence require that its admission should be subjected by the courts to rigid scrutiny. * * * [I]f the court does not clearly perceive the connection between the extraneous criminal transaction and the crime charged, that is, its logical relevancy, the accused should be given the benefit of the doubt, and the evidence should be rejected."

This court has said in this connection in Michelin v. State, 66 Okl.Cr. 241, 90 P.2d 1081, 1083:

"We realize that this question is of serious import in the trial of criminal cases in this state. Every person

charged with the commission of a crime is presumed to be innocent until his guilt has been established beyond a reasonable doubt. That he shall be charged with but one offense, and that he shall not be convicted for the commission of an offense other than the one charged. The court should, therefore, be very careful in drawing the line as to the introduction of this testimony, and in seeing that it comes clearly within the exception to the general rule before it is permitted to be introduced."

To the same effect see People v. Peete, 28 Cal.2d 306, 169 P.2d 924.

■ For evidence of other offenses to be admissible, there must be a visible connection between the crimes. Nemecek v. State, 72 Okl.Cr. 195, 114 P.2d 492, 135 A.L.R. 1149; Pressley v. State, 71 Okl. Cr. 436, 112 P.2d 809; Landon v. State, 77 Okl.Cr. 190, 140 P.2d 242; Herron v. State, 75 Okl.Cr. 251, 130 P.2d 325.

"The fact that one person may commit a similar crime does not justify the admission of the other identical offenses if they are independent of each other. Where the trial court cannot clearly see a visible connection between the alleged other offenses to the one charged, he should refuse to admit the other offenses in evidence. If the trial court is uncertain as to the admissibility of such evidence, he should give the benefit of such doubt to the defendant as it is manifestly unfair to the accused to force him to prepare to defend himself against any collateral crime other than the one charged against him in the information. Juries are too prone, when such other offenses are admitted in evidence, to find an accused guilty of the crime charged merely because he might have committed some other offense." Byers v. State, 78 Okl.Cr. 267, 147 P.2d 185, 188.

To the same effect is Koontz v. State, 10 Okl.Cr. 553, 139 P. 842, Ann.Cas.1916 A, 689; State v. Rule, 11 Okl.Cr. 237, 144

P. 807; Emerson v. State, supra; Davis v. State, 31 Okl.Cr. 109, 237 P. 471; Call v. State, 39 Okl.Cr. 264, 264 P. 643; Riley v. State, 57 Okl.Cr. 313, 49 P.2d 813; Clark v. State, supra; Pressley v. State, 71 Okl. Cr. 436, 113 P.2d 809.

■ Obviously the courts have adopted five exceptions to the general rule whereby testimony of other offenses may become competent when it is material and proper to show (1) Motive, (2) Intent, (3) Absence of mistake or accident, (4) Identity of the person charged with the commission of crime for which he is on trial, and (5) Common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other. In order for the evidence in the case at bar relative to other offenses to be competent it must come within one of the above categories. The court in its instructions to the jury advised the jury that the testimonies given by Taylor and Cruz as to other offenses could not be considered by them except insofar as they may tend to connect the defendant with the crime for which he was on trial or to show the circumstances thereof. Insofar as they tend to establish a common scheme or plan, guilty knowledge, motive or intent in the commission of the defense charged herein, we are not able to justify the court's instructions in this regard nor the admissibility of this testimony in that such evidence tends to show motive or intent. We cannot conclude that a subsequent robbery would in any manner tend to prove motive of a prior robbery for which the defendant was on trial. Neither can we justify it in that it would tend to prove intent because of the manner in which the crime was committed as reflected by the testimony. It is clearly shown and demonstrated by the violence used and employed in the use of a gun and the taking of the money was sufficient within itself to constitute the crime of robbery without proof of motive or intent. Most of the States have adopted the common-law definition of robbery and when executed with violence demonstrated

and used, intent is necessarily involved. Traxler v. State, 96 Okl.Cr. 231, 243, 251 P.2d 815; People v. Jordan, 303 Ill. 316, 135 N.E. 729; Tones v. State, 48 Tex.Cr.R. 363, 88 S.W. 217, L.R.A.,N.S., 1024, 122 Am.St.Rep. 759; Wynn v. Com., 135 Ky. 447, 122 S.W. 516. It is quite obvious the third exception—the absence of mistake or accident would not be applicable to this set of facts. No mistake or accident is contended or involved in the case at bar. The next exception being the testimony on the basis of scheme or plan which was evidently relied upon by the court in admitting this evidence as was reflected by the remarks of the court in the transcript. After reading the testimony carefully in this case, writer was unable to find any evidence directly or by inference that a common scheme or plan was promulgated or carried out. The testimonies of Taylor and Cruz which was admitted over objection by the defendant, were separate and distinct offenses entirely disconnected with the offense charged and for which the defendant was being tried. There is a well-established exception to the general rule of evidence including other crimes or offenses. And as was stated by this court in Bunn v. State, 85 Okl.Cr. 14, 21, 184 P.2d 621, 624:

"There have been many instances of abuse of this exception to the general rule [and] the abuse of this rule has caused the reversal of more cases on appeal in this court in recent years than that of any other one matter."

■ The court has repeatedly held that this exception and other exceptions to the general rule are to be used with the utmost caution and that the court must perceive a visual connection and in case any doubt is entertained it is to be resolved in favor of defendant. The exception to the general rule is not secondary to the rule and before evidence of other crimes can be competent or admissible in a criminal trial to prove the specific crime charged on the grounds of common scheme or plan, the two or more crimes must be so clearly related that the proof of one tends to establish the other

and should never be admitted when it tends to show that the accused has committed other crimes wholly independent of that for which he is on trial. In other words, the law permits proof of the plan or scheme to commit a series of crimes including the one for which the accused is being tried if it has a tendency to show the existence of a common scheme or plan or the court may allow testimony of the commission of crimes other than the one charged if so related in character, time and place of commission if it tends to support the conclusion that there was a plan or system which embraced both that and the crime for which he is charged. Such as where the crime is committed to prepare the way for another and the commission of the second crime is made to depend upon the perpetration of the first. In that event the second becomes connected and a related transaction and the proof of the commission of the first becomes relevant to show the motive for the perpetration of the second. Doser v. State, 88 Okl.Cr. 299, 203 P.2d 451. Such instances arise in cases of embezzlement, in forgery, and obtaining money under false pretenses. Boyer v. State, 68 Okl.Cr. 220, 97 P.2d 799; Chappell v. State, 74 Okl.Cr. 213, 124 P.2d 742. In Miller v. State, 13 Okl.Cr. 176, 163 P. 131, 133, L.R.A.1917 D, 383, Judge Doyle quotes from Mr. Underhill on Criminal Evidence, Section 88, as follows:

"No separate and isolated crime can be given in evidence. * * * Some connection between the crimes must be shown to have existed in fact and in the mind of the actor uniting them for the accomplishment of a common purpose, before such evidence can be received. This connection must clearly appear from the evidence. Whether any connection exists is a judicial question. If the court does not clearly perceive it, the accused should be given the benefit of the doubt and the evidence rejected."

In the case of Miller v. State, 13 Okl.Cr. 176, 163 P. 131, 133, L.R.A.1917D, 383, this court passed on this matter in a very similar case where the trial court permitted

an accomplice witness to testify in reference to conspiracy to commit another robbery entirely disconnected with the offense with which defendant was charged. In the above case the court said:

"To bring a case within this exception to the general rule, there must be evidence of system between the offense on trial and the one sought to be introduced. They must be connected as parts of the general scheme or plan."

The court in the Miller case, supra, permitted a state witness, Earl Smith, to testify in substance that on the night preceding the night of the robbery charged against the accused, he was robbed at the point of a gun in a like manner and form, and in the same city of Muskogee, where the robbery charged was· said to have been committed. This testimony over objections by the defense and the defendant was convicted and appealed to this court and said cause reversed. In commenting on the admission of said testimony, Judge Doyle had this to say:

"The mere fact that the crime charged in the information and the crime testified to by the witness Smith were similar in the method and the means employed in their execution does not serve to identify the defendant as the man who robbed Orall. There was no such intimate connection between the two crimes, that in proving the one, the evidence necessarily tended to prove the other. Such proof in a doubtful case might turn the scales against the defendant, but the law does not permit it, and it would be dangerous to subvert the rule, upon the vague theory that it identifies the defendant as the person who committed the offense charged. The only testimony of witness Earl Smith which was competent and admissible in this case is that part, and that part alone, in which he states that he saw the defendant in Muskogee on the night preceding the robbery of Orall. As to his testimony detailing the facts constituting another robbery, it was clearly incompetent, and its ad-

mission was necessarily prejudicial to the defendant, because he was only required to meet the charge of robbery in the information, and he is not presumed to know that he would have to meet the repel testimony as to another separate and distinct offense."

In supporting the general rule, your writer finds no better language than is related in People v. Molineux, 36 Misc. 435, 73 N.Y.S. 806, Id., 168 N.Y. 264, 61 N.E. 286, 293, 62 L.R.A. 193; the Court of Appeals says:

"This rule, so universally recognized and so firmly established in all English-speaking lands, is rooted in that jealous regard for the liberty of the individual which has distinguished our jurisprudence from all others, at least from the birth of the Magna Charta. It is the product of that same humane and enlightened public spirit which, speaking through our common law, has decreed that every person charged with the commission of a crime, shall be protected by the presumption of innocence until he has been proven guilty beyond a reasonable doubt. This rule, and the reasons upon which it rests, are so familiar to every student of our law that they need to be referred to for no other purpose than to point out the exceptions thereto."

Judge Doyle made further reference to the Molineux case, supra, proclaiming the importance of adhering to the general rule:

" 'The very fact that is much easier to believe in the guilt of an accused person when it is known or suspected that he has previously committed a similar crime proves the dangerous tendency of such evidence to convict, not upon the evidence of the crime charged, but upon the superadded evidence of the previous crime. Hence our courts have been proverbially careful to subject such evidence to the most rigid scrutiny, and have invariably excluded it in cases where its relevancy and competency was not clearly shown.' " [163 P. 133]

It can be clearly seen that such evidence tends necessarily and directly to load the prisoner down with separate and distinct charges of other crimes, which it cannot be supposed, he is or will be in proper condition to meet or explain, and which necessarily tend to gravely prejudice him in the minds of the jury upon the question of his guilt or innocence; —such evidence gives opportunity for the conviction of an accused person upon *mere prejudice,* instead of evidence, showing the actual commission for which a defendant is on trial.

The weight of authority in other jurisdictions seems to support our position here: Nunn and Luster v. State, 60 Tex.Cr.R. 86, 131 S.W. 320, 321. In this case defendants were charged with burglarizing a hardware store and trial court permitted said witness to testify that his store was burglarized in same city on the same date by the same parties and sold to the same man. The court in that case held:

"We are of opinion that this testimony was not admissible and the court was in error in permitting the State to offer proof of another and distinct offense. It should not be introduced to prove system because there was no peculiar way in which either offense was committed. It was no part res gestae as the other offense was complete without reference to it, and it had no connection with the other offense. * * * that the same was prejudicial to the defendants; and for this reason the case is reversed."

In the case of Nickels v. State, 90 Fla. 659, 106 So. 479, 488, the question is very clearly set forth as to why strict limitations would be placed upon the exception to the general rule as follows:

"Evidence that the defendant has committed a similar crime or one equally heinous will frequently prompt a more ready belief by the jury that he might have committed the one with which he is charged; thereby predisposing the mind of the juror to believe the prisoner guilty. Generally,

therefore, it is harmful error to admit evidence of other or collateral crimes independent of and unconnected with the crime for which defendant is on trial."

Roberson v. State, 40 Fla. 509, 24 So. 474; Gafford v. State, 79 Fla. 581, 84 So. 602; 16 C.J. 586, 22 C.J.S., Criminal Law, § 682; 8 R.C.L. 210.

The state in its brief contends that the testimony of other offenses was admissible for the reason that it tended to destroy the proposed alibi of the defendant. However, we do not agree with that contention; especially in view of the testimony of witnesses Taylor and Cruz being used in chief and not in rebuttal. There may have been merit to the contention of the State had said witnesses been called in rebuttal and identified the defendant as having been in the vicinity at a time sufficient to refute the alibi, but we doubt seriously even in that event if the testimony as to the minute details of the offense would have been admissible. We can readily see the importance of the theory advanced by the state that in view of the efforts of the defendant to establish an alibi in that placing the defendant in the vicinity was of vital importance, but could have been easily done on rebuttal without relating other offenses of crime. The general rule must not be abused by prejudicing the defendant with evidence of other crimes under the cover of destroying the alibi by relating in detail the manner in which the crimes were committed. There is always more or less similarity between the commission of independent crimes of this class and in many instances features that are common to one are found in the other. And yet it has never been supposed, where there was separation as to time and no connection established, beyond that of place and similarity, that other crimes were admissible to establish any of the elements which constituted the charge for which defendant was being tried, nor is it proper to admit in evidence the details of separate and distinct crimes for the purpose of showing the identity of the accused. 3 A.L.R. 1543;

United States v. Boyd, C.C., 45 F. 851. It has been held in many jurisdictions where the identity of the accused is established by other evidence and therefore, is no longer an issue, it is improper to admit evidence of other crimes for the purpose of proving identity. Gibson v. State, 14 Ala. App. 111, 72 So. 210; Billings v. United States, 42 App.D.C. 413; State v. Spray, 174 Mo. 569, 74 S.W. 846, 14 Am.Cr.Rep. 603; Kelley v. State, 79 Tex.Cr.R. 362, 185 S.W. 570. Testimony reflects in the case at bar positive identification was made of the defendant by the victim. He was apprehended in the car bearing the license number of the one used in robbing the victim. When he was apprehended the money in its original box with the victim's name on it was found in the car. We cannot justify the admission of this evidence on the theory of identity for the reason that witnesses Taylor and Cruz' identification of defendant as the man who robbed them would in no way or manner tend to prove he was the same man who robbed the witness in this case, and the only purpose it would positively serve was to place defendant in the vicinity.

For the court to say this evidence is admissible would open the door to collateral issues not embraced within the information and of which the accused is not apprised, hence, unprepared to meet such issues. That to enter upon the trial of them may require as much or more time to try them as to try the charged offense. For surely as the state is permitted to give evidence with respect to the commission of other like offenses, the accused may also give evidence in refutation thereof. One of the requirements and functions of an information is to distinctly use ordinary concise language setting forth the offense upon which the accused is on trial and in such manner as to enable him to prepare himself to meet the charged offense and to limit and restrict evidence with a respect thereto. After a thorough review of this record, we are convinced that the complained of evidence under the guise of showing intent, guilty knowledge or motive, common scheme or plan, was introduced, to show the commission of other like offenses to indicate a probability of the commission by the accused of the charged offense. This we consider a dangerous species of evidence, not only because it requires him, but it may lead the jury to violate the great principle that a party is not to be convicted of one crime by proof that he is guilty of another. Thus, we are of the opinion that prejudicial error was committed by admitting the evidence of other alleged offenses; the judgment and sentence of the District Court of Murray County is vacated. The conviction is reversed and the cause is remanded with instructions to grant the defendant a new trial.

BRETT, P. J., and POWELL, J., concur.