**David L. LEWIS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–82–254.**

Court of Criminal Appeals of Oklahoma.

Oct. 7, 1982.

Rehearing Denied Oct. 21, 1982.

Kay Terrill, Terrill & Doerfel, Lawton, for appellant.

Jan Eric Cartwright, Atty. Gen., Ross Plourde, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

BUSSEY, Judge:

On appeal from his conviction for Assault with Intent to Rape, in Comanche County District Court, Case No. CRF–81–46, the appellant, David L. Lewis, raises several assignments of error, only one of which we need address in this opinion.

The appellant contends that the trial court erred in permitting the State to introduce evidence of a separate and distinct offense other than the one for which he was placed on trial. As was stated in *Roulston v. State,* 307 P.2d 861 (Okl.Cr.1957), a case cited by the appellant, the general rule is that:

> [E]vidence of a separate and similar offense is not admissible against the accused on trial for another specific offense; that, when the accused is put on trial for one offense he is to be convicted, if at all, by evidence which shows him guilty of that offense alone and proof of guilt of one or more similar offenses unconnected for that which he is on trial must be excluded. (citations omitted).

To the above general rule there are a number of exceptions, which permit the introduction of evidence of other crimes. In the recent case of *Driver v. State,* 634 P.2d 760 (Okl.Cr.1981), we stated:

> However, such evidence may be admitted where it establishes: 1) motive; 2) intent; 3) absence of mistake or accident; 4) identity of the person charged; and, 5) a common scheme or plan embracing the commission of two or more crimes, so related to each other that proof of one tends to establish the other. *Roulston v. State,* 307 P.2d 861 (Okl.Cr.1957). Even if the evidence satisfies one of the exceptions, its admissibility is still dependent on a finding that its probative value outweighs the prejudice to the accused. *Stowe v. State,* 590 P.2d 679 (Okl.Cr. 1979).

In *Driver,* supra, we further noted that:

> In past cases this Court has deemed evidence which demonstrates a highly distinctive method of operation as a factor which is relevant in determining the guilt or innocence of the accused. °*Turnbow v. State,* 451 P.2d 387 (Okl.Cr.1969). Such evidence is admissible if the peculiar method of operation is so unusual and

distinctive as to be like a signature. *Rhine v. State,* 336 P.2d 913 (Okl.Cr.1958). *Hills v. Henderson,* 529 F.2d 397, 399–400, (5th Cir. 1976). *United States v. Benedetto,* 571 F.2d 1246, 1249 (2d Cir. 1978), McCormick, *Evidence* § 190 at 449 (2d ed. 1972).

In the present case, L.B. testified that at about 5:00 A.M., on January 13, 1981, while employed as a clerk at a 7–11 convenience store located at 67th and Gore in Lawton, Oklahoma, she was attacked by a man, who wore bluejeans, a plaid shirt and had a woman's stocking over his head. The assailant, who she later identified from a group of photographs as the appellant, knocked her to the ground, drug her behind a dumpster, and, in response to her offer to give him the money in the store, stated "I don't want the money, I want you." Ms. B. further stated that a passing vehicle distracted the appellant, and she made her escape.

B.L. testified that at about 1:00 A.M., on June 14, 1981, a man broke into her home in Lawton, and attempted to have unnatural sex acts with her. The timely arrival of the Lawton police intervened, and her attacker fled, but was soon apprehended. At trial, the witness could not positively identify the appellant as her attacker.

Officer Otis Russell of the Lawton police department testified that he had occasion to arrest the appellant in the early morning hours of June 14, 1981, for the attack upon Ms. L. He further stated that due to that arrest he was absolutely positive that the appellant was the same person he had seen at about 4:00 A.M., on January 13, 1981, wearing a nylon stocking, plaid shirt and bluejeans, exit the 7–11 store located at 27th and Gore. Further, the appellant fit the exact description of the assailant who an hour later attacked Ms. B.

Unlike the factual situations presented in *Driver, Turnbow*[1] and *Rhine,* supra, the evi-

---

1. In *Turnbow,* the peculiar method in each of the instances testified to were that: (1) they all occurred in a laundromat; (2) on each occasion the women were threatened by a knife; (3) they were all directed to the restroom where, in two instances, they were required to disrobe, place one foot on the toilet stool and were criminally assaulted in that position; and (4) in the two instances they were forced to commit acts of oral sodomy.

**1346** 

dence in the case at bar fails to demonstrate a peculiar method of operation that is so unusual and distinctive as to be like a signature to identify the appellant. Thus, the highly prejudicial evidence of other crimes was improperly admitted by the trial court.

Accordingly, the judgment and sentence is REVERSED and REMANDED for proceedings not inconsistent with this opinion.

BRETT, P. J., and CORNISH, J., concur.

In *Driver,* the victims were all young women between the ages of twenty four (24) and twenty seven (27); all lived in close proximity to each other; all were attacked in the late evening hours or early morning; each was initially threatened with harm if she resisted; each had her hair pulled while being attacked by the man who brandished a knife or other pointed object; all were raped in their bedrooms while blindfolded; all were attacked by a man who either attempted, or was successful in making each submit to rear-entry intercourse; each testified that her assailant was preoccupied with cleanliness, in that after each rape the attacker requested a washcloth in order to cleanse himself; all were raped by a man who at some time during the incident wore gloves; and all described their assailant as a soft-spoken, slender, black man, 5′6″ to 5′9″ in height, weighing between 130 and 160 pounds, who sported some facial hair.